# SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION
## Columbia, South Carolina

### Transcript of Testimony

### Before

### Daniel C. Beach, Administrative Hearing Officer

| | | |
|---|---|---|
| Cheryl H. Powell<br>P. O. Box 1568<br>Lake City, SC 29560<br>Claimant SSN: XXX-XX-3244 | )<br>)<br>)<br>) | **CLAIMANT** |
| Nan Ya Plastics Corporation America<br>P. O. Box 939<br>Lake City, SC 29560 | )<br>)<br>) | **LIAVLE EMPLOYER** |

**PLACE OF HEARING:**  Hearing Conducted at:
SC Employment Security Commission
1558 W. Evans Street
Florence, SC 29501

**DATE OF HEARING:**  July 19, 2007

> didn't need to be standing at Brandy's desk with someone you had a personal relationship with. It didn't look good for the company. You needed to go back to your work. He needed to go do his work.

CLAIMANT: Okay. When I went to Brandy's desk which the printer from the AS400 is where I pick up my (inaudible). Do you agree that I should have left when he walked in the office?

EW-2: I thought you went to go pick up the papers and then go back to your desk. I didn't know you needed to socialize INAUDIBLE.

CLAIMANT: How long were you in that office? How long was I in the office with Brandy?

EW-2: I don't know how long you'd been there. I went in at 8:20 and you were there. You could have been there from 8:00 as far as I know.

CLAIMANT: That's right. You're not sure how long I had been there. You're not sure of how long Ronnie had been in there.

A.H.O.: Well --

CLAIMANT: The question --

A.H.O.: Hold on. Hold on. Let's just ask the question. Let's don't respond or infer what did or did not happen. Let's just ask the question, let

EW-2: And that is in evidence. It happened when I first came ... that was at the end of it.

CLAIMANT: When we first came back from POY2 which was only a split moment, do you agree when we got back to the QC2 Field Office, when I gave you the AVs --

EW-2: We came back --

CLAIMANT: That that was Carl Honeycutt's AV?

EW-2: No. You handed me a stack of papers. At the end of the argument it was Kirk Jordan's. That's the ones I handed back to you and said this employee is not mine. And you said, "Yes it is." I said, "No. Pay attention to what you're doing. It is not mine."

CLAIMANT: Okay, so that ... do you agree that's whenever I came to find out you were the one to sign my authorization to have vacation?

EW-2: No, that was ... no, that happened a few moments previous to that.

CLAIMANT: A few what?

EW-2: Moments previous to that.

CLAIMANT: Moments?

EW-2: Yes.

01AE000048
18502.0019

CLAIMANT: Right. Okay. So that's whenever you first became the one to sign off on my AVs was that moment. That's ... do you agree that's why you didn't have my AV to authorize if I could have vacation because you had not signed by AVs in the years?

EW-2: Yes, I had signed your AVs in the years.

CLAIMANT: When ... do you sign it whenever Travis is out?

EW-2: At times.

CLAIMANT: Right. Okay. So it is a clear statement then that you normally don't sign my AVs until that particular day because whenever I was told to give you the AV for approved vacations?

EW-2: As you're well aware, we have more than one boss in the office; three managers, David Tramble, myself, and Travis Hyman. At different times all three of us signs your vacations. This particular year our director asked me to do the evaluations for the management Assistants, so I started signing the AVs.

CLAIMANT: Does that eliminate my immediate supervisor from signing ... is he aware that he doesn't need to sign those?

A.H.O.: He's not here to testify.

to work." I said, "What?" And then he turned to Ronnie and said, "And you Ronnie get upstairs and get to work." And then he turned to me and said, "Get to your desk." I turned around. I went back to my desk. And the phone rang. It was for Steven Page.

A.H.O.: Alright. In this office outside of Ms. Morris, did you ever make a statement to Ms. Morris to the fact that I'm going to have to make an appointment with you from now on?

CLAIMANT: No sir.

A.H.O.: You didn't make that statement?

CLAIMANT: No sir. I turned around and walked back to my desk because Steve said, "Go back to your desk."

A.H.O.: Did you mumble anything on the way back to the desk?

CLAIMANT: No sir.

A.H.O.: Did you go back to your desk?

CLAIMANT: I did that.

A.H.O.: What happened then?

CLAIMANT: The phone rang. I answered. It was for Steve Page. I gave him the phone. When he got off the phone he was standing there at the desk

76

behind my desk. And Mr. Jim Lew, the director to the AVP, was standing there ... was sitting there at his desk. And I said, "Steve, why didn't you ask me what I was doing in POY2's office?" He said ... he said, --

A.H.O.: Well, first of all, what are you referring to when you're looking down and trying to refresh your memory?

CLAIMANT: My notes of the accusation.

A.H.O.: Was that notes that you took on the specific day that they occurred or did you write those notes in preparation of the hearing here today?

CLAIMANT: Preparation for the hearing.

A.H.O.: Please from your memory is what I'm looking for.

CLAIMANT: Okay. So whenever he was behind my desk, I said, "Steve, why didn't you ask me what I was doing in POY2's office?" And he said, "Cheryl, change your attitude." I said, "Steve, I'm upset." I said, "This is a natural emotion. I am upset for the way you have addressed this issue." And he said, "Cheryl, change your attitude." I said, "Steve, what appears and what is are two different things. I

01AE000079
18502.0019