# WITNESS STATEMENT OF CHRISTIAN J. MANN

PERSONALLY APPEARED, Christian J. Mann, who, being duly sworn, stated as follows:

1. My name is Christian J. Mann. I currently reside in Lexington, South Carolina. From September 2004 to June of 2007, I was a Personnel Supervisor at Nan Ya Plastics Corporation, America in Lake City, South Carolina.

2. As a Personnel Supervisor, I worked with two other Personnel Supervisors, Mike Kromer and Ryan Gaines. I reported to Eric Stevenson. We also had four Administrative Assistants working for us in the Department. My job duties included dealing with employee issues regarding payroll and benefits, training, and administering employment policies and procedures.

3. I knew Cheryl Powell while I worked at Nan Ya. She was an Administrative Assistant in the Quality Control area. I did not work directly with Ms. Powell. However, there were times when I worked through Cheryl to obtain information I needed to perform my job duties. She also answered the phone in the QC II office when I called for others and passed messages back and forth.

4. I was not directly involved with any of the disciplinary actions which led to the termination of Cheryl Powell's employment. I did, however, attend a meeting in late February 2007 with Cheryl Powell, Eric Stevenson, and Anny Tsai.

5. On the morning of February 22nd, I met with Mr. Stevenson and Ms. Powell. David Trammell reported to Mr. Stevenson that Ms. Powell had told him that unprofessional comments were being made in her presence in the Quality Control office. After receiving this information, Mr. Stevenson scheduled a meeting with Ms. Powell to investigate. Ms. Powell requested that Anny Tsai, Assistant Manager of Sales, be brought in the meeting. Ms. Tsai joined the meeting before it started.

6. During the meeting, Ms. Powell stated that various people working with her in the QC II office had made comments that employees had to "get on their knees" to get a promotion. She also said that if someone asked where a particular employee was, the answer was sometimes, "go look under the boss' desk." Ms. Powell said that the comments were in a joking manner and not directed at her. She also said that although they made her feel uncomfortable at first, she became accustomed to them and would join in and laugh when the comments were made. However, she still thought that the comments were unprofessional and wanted them to stop. Ms. Powell added that she did not think the comments were sex harassment.

7. The individuals she mentioned as making these comments were Travis Hyman, Steve Page, Brent Cutwright, Bob Parsons, Devin Baxley, Chris Chapman, and Keith Seal. Chapman and Seal are no longer with the Company. Mr. Stevenson and I divided up the people involved and talked to them about the incident. I remember talking to Bob Parsons. I told him that we were aware of these statements and that they would stop immediately. He committed to discontinue any comments of this type.

8. I had no other involvement in this matter nor am I aware of any further comments made by Ms. Powell. In the meeting I attended with Ms. Powell, she did not allege that anyone had touched her inappropriately, directed any inappropriate comments towards her, or asked her to participate in any sexual activities.

9. Mr. Stevenson and I prepared a memorandum shortly after this meeting outlining what happened. Part of the memorandum involved things I had no personal knowledge of. However, as far as it relates to what happened in the meeting, it is correct and complete. A copy is attached as Attachment A.

Pursuant to 28 U.S.C. §1746, I declare under penalty and perjury that the foregoing is true and correct.

*/s/ Christian J. Mann*
Christian J. Mann

Dated this 6th day of March.