# WITNESS STATEMENT OF GREG MORRIS

PERSONALLY APPEARED, Greg Morris, who, being duly sworn, stated as follows:

1. My name is Greg Morris. I currently reside in Lake City, South Carolina.

2. I am employed at Nan Ya Plastics Corporation, America, in Lake City, South Carolina.

3. I am an Assistant Supervisor in Quality Control Automated Packing II.

4. I am familiar with a former employee named Cheryl Powell who used to work at Nan Ya.

5. Ms. Powell and I both had a desk in the same office. There were six desks in the office and the area was very small.

6. I also have an office in another section of the plant, but I do not have a computer in that office. I use the office where Ms. Powell worked when I need to use a computer.

7. I typically was only in the office where Ms. Powell was located from around 8:00 a.m. to 9:00 a.m. I was not in the office directly at 8:00 a.m. as I had a meeting every morning at 8:00 a.m. and came to Ms. Powell's office after my meeting ended.

8. I am aware that Ms. Powell had an issue with tardiness, but I did not monitor her attendance. I also saw Ms. Powell pushing the rules at Nan Ya, such as walking up to the gate while on her cell phone despite the fact that this was a violation of Nan Ya rules.

9. Many of the Filament II employees coming in and out of this office poked fun at each other and made good-natured comments.

10. There was a period of time when the term "under the desk" was used by some Filament II employees in and around this office. These comments later stopped.

11. I am unaware as to why the comments "under the desk" were stopped. However, there was a rumor that a meeting occurred and that employees were asked to be more professional. The banter between employees cleaned up immediately.

12. Ms. Powell has alleged that she hooked up a computer for Stephen Page. Mr. Page has a desk in the office with Ms. Powell and me.

13. I handle the computer issues in the office. In fact, I hooked up Ms. Powell's computer when she had trouble as she does not know how to hook up her computer.

14. I never recall seeing Ms. Powell under Stephen Page's desk or hooking up his computer. In fact, if Mr. Page could not reach a plug or needed help hooking up his computer, I believe he would have asked me to handle this matter.

15. Also, if I had seen that the computers in the office were undone, I would have plugged in the computers and hooked them back up.

16. Whenever the floors were cleaned and the computers were unhooked, one of my division's responsibilities was setting the computers back up.

17. I am aware of an incident involving Ms. Powell when she was inappropriate.

18. Mr. Graham, an employee, was being terminated for a third violation of safety rules, and Ms. Powell received the paperwork as Stephen Page, who she worked for, was involved in terminating Mr. Graham.

19. Ms. Powell told me that Mr. Graham should not be terminated by Stephen Page, and stated that Mr. Page did not have the authority to terminate Mr. Graham because Mr. Page had not turned in a doctor's note saying he could return to work.

20. I felt that Ms. Powell crossed the line on job issues as this was not her business.

21. Ms. Powell shared personal information pertaining to Mr. Graham and Mr. Page.

22. I did not respond to Ms. Powell because I was not sure if she was directing her comments to me or to others in the office. Regardless, Ms. Powell stated this with several people in the office and made a big deal of the issue.

23. I have no information as to why Ms. Powell left Nan Ya. I came into the office and simply found out that Ms. Powell was no longer employed by Nan Ya.

Columbia 229404.1

Pursuant to 28 U.S.C. §1746, I declare under penalty and perjury that the foregoing is true and correct.

                                                 _____
                                                 Greg Morris

Dated this 19 day of May, 2009.