Westlaw.

217 Fed.Appx. 201   Page 1
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

C

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Stacie D. BROCKMAN, Plaintiff-Appellant,
v.
John SNOW, Secretary, United States Department of the Treasury, Defendant-Appellee.
No. 06-1004.

Argued: Nov. 30, 2006.
Decided: Feb. 13, 2007.

**Background:** Federal employee brought civil rights action, alleging discrimination, retaliation, and failure to accommodate, in violation of Title VII and the Rehabilitation Act. The United States District Court for the District of Maryland, Roger W. Titus, J., granted employer's motion for summary judgment in bench trial, and employee appealed.

**Holdings:** The Court of Appeals, Duncan, Circuit Judge, held that:
(1) employee failed to establish adverse employment action;
(2) employee failed to demonstrate that employer's legitimate nondiscriminatory reason for denying her request to work from home was pretextual; and
(3) employee failed to establish that she was substantially limited in major life activity.

Affirmed.

West Headnotes

[1] Civil Rights 78 €→1126

78 Civil Rights
   78II Employment Practices
      78k1124 Public Employment
         78k1126 k. Particular Cases. Most Cited Cases

Civil Rights 78 €→1138

78 Civil Rights
   78II Employment Practices
      78k1138 k. Disparate Treatment. Most Cited Cases
Federal employee alleging discrimination or disparate treatment in violation of Title VII failed to establish adverse employment action, where none of the adverse actions alleged by employee amounted to ultimate decisions supporting such a claim. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[2] Civil Rights 78 €→1126

78 Civil Rights
   78II Employment Practices
      78k1124 Public Employment
         78k1126 k. Particular Cases. Most Cited Cases

Civil Rights 78 €→1135

78 Civil Rights
   78II Employment Practices
      78k1135 k. Promotion, Demotion, and Transfer. Most Cited Cases

Civil Rights 78 €→1138

78 Civil Rights
   78II Employment Practices
      78k1138 k. Disparate Treatment. Most Cited Cases

Civil Rights 78 €→1176

78 Civil Rights
   78II Employment Practices

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201                                                                                                      Page 2
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

78k1164 Sex Discrimination in General
      78k1176 k. Pregnancy; Maternity. Most Cited Cases
Neither denial of federal employee's request to work from home during her pregnancy, employee's assignment to different projects, nor failure of employee's supervisor to return employee's telephone calls amounted to ultimate decisions supporting claim of discrimination or disparate treatment in violation of Title VII. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[3] Civil Rights 78 ☞1244

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1244 k. Activities Protected. Most Cited Cases

United States 393 ☞36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal employee alleging retaliation under Title VII engaged in "protected activity," within scope of the statute, by serving as witness in another employee's Title VII complaint to employer's Equal Employment Opportunity and Diversity (EEOD) office. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[4] Civil Rights 78 ☞1251

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases

United States 393 ☞36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal employee alleging retaliation in violation of Title VII, on basis of her having served as witness in another employee's Title VII claim, failed to demonstrate that employer's legitimate nondiscriminatory reason for denying her request to work from home was pretextual, where employee's supervisor responded to her request by stating that employee could not perform her job as well from home because performance of work duties was incompatible with employee's doctor's order of bed rest, employee was difficult to reach by phone or fax, and employee worked with sensitive information that needed to be secured for privacy purposes. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[5] Civil Rights 78 ☞1251

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases

United States 393 ☞36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Failure of federal employee's supervisor to return employee's phone calls was not evidence that employer's legitimate nondiscriminatory reason for denying employee's request to work from home was pretextual, as required to support claims of retaliation in violation of Title VII and the Rehabilitation Act, where supervisor responded in timely fashion and requested that employee provide more information about her medical condition and proposal to work from home, and employee never provided medical information indicating that her health problems rose to level of disability. Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.;

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201 Page 3
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[6] Civil Rights 78 ⚯1251

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases

United States 393 ⚯36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Factual inconsistencies in record were peripheral to federal employee's Title VII retaliation claim and were not sufficiently material to show that employer's legitimate nondiscriminatory reason for denying employee's request to work from home was pretextual. Civil Rights Act of 1964, § 701, 42 U.S.C.A. § 2000e.

[7] Civil Rights 78 ⚯1251

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases

United States 393 ⚯36

393 United States
    393I Government in General
        393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal employee alleging retaliation in violation of Rehabilitation Act, on basis of her having requested reasonable accommodation for disability, failed to demonstrate that employer's legitimate nondiscriminatory reason for denying her request to work from home was pretextual, where employee's supervisor responded to her request by stating that employee could not perform her job as well from home because performance of work duties was incompatible with employee's doctor's order of bed rest, employee was difficult to reach by phone or fax, and employee worked with sensitive information that needed to be secured for privacy purposes. Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.

[8] Civil Rights 78 ⚯1218(3)

78 Civil Rights
    78II Employment Practices
        78k1215 Discrimination by Reason of Handicap, Disability, or Illness
            78k1218 Who Is Disabled; What Is Disability
                78k1218(3) k. Particular Conditions, Limitations, and Impairments. Most Cited Cases

Civil Rights 78 ⚯1552

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1543 Weight and Sufficiency of Evidence
            78k1552 k. Discrimination by Reason of Handicap, Disability, or Illness. Most Cited Cases
Federal employee alleging discrimination in violation of Rehabilitation Act, on basis of her having requested reasonable accommodation for complications from pregnancy, failed to establish that she was substantially limited in major life activity, where employee offered no evidence with respect to duration of her impairment or its severity; only evidence proffered by employee was doctor's note stating that she should be on bed rest "until further notice" and her own claim that doctor orally instructed her not to walk long distances, and employee walked, stood, and performed other work functions after coming back to work of her own accord. Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.; 29 C.F.R. § 1630.2(j)(1).

*203 Appeal from the United States District Court

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201                                      Page 4
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

for the District of Maryland, at Greenbelt. Roger W. Titus, District Judge. (CA-04-1823-8-RWT).**ARGUED:** Nathaniel Baccus, III, Washington, D.C., for Appellant. Ariana Wright Arnold, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

Before MOTZ and DUNCAN, Circuit Judges, and GERALD BRUCE LEE, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge DUNCAN wrote the opinion, in which Judge MOTZ and Judge LEE joined.
Unpublished opinions are not binding precedent in this circuit.DUNCAN, Circuit Judge:

**\*\*1** Stacie D. Brockman ("Brockman") appeals the district court's grant of summary judgment to the Internal Revenue Service ("IRS") on her discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 790, et seq. For the reasons that follow, we affirm.

I.

As is required upon review of a grant of summary judgment, we view all disputed **\*204** facts in the light most favorable to Brockman and draw all reasonable inferences in her favor. *See Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 438 (4th Cir.1998). In 2001, Brockman was a program analyst in the IRS's Equal Employment Opportunity & Diversity ("EEOD") office. On November 14, 2001, Brockman and her co-worker Deborah Lewis ("Lewis") met with their "second-level supervisor," Rich Morgante, the Director of Management and Finance, to discuss the allegedly discriminatory work environment created by JoAnn Innis ("Innis"), then-director of the EEOD. Lewis eventually filed an EEO complaint against Innis that identified Brockman as a supporting witness. Lewis emailed a copy of the complaint to her supervisor and copied Christina Mollett ("Mollett"), a Senior Operations Advisor. Lewis eventually accepted a settlement agreement disposing of her complaint. Mollett did not handle the complaint itself or negotiate the settlement agreement. She did, however, implement the terms of the settlement. To that end, Mollett met with Brockman, Lewis, and another employee, Cynthia Marks, at the direction of her supervisor, Morgante.[FN1]

> FN1. Although Mollett testified that she never saw a copy of the complaint, Lewis's affidavit stated that Mollett requested the meetings with the three employees to discuss its allegations. Therefore, we must assume that Mollett had at least some knowledge of the complaint and Brockman's participation therein.

In January 2002, Innis was removed as EEOD Director and replaced by Mollett as Acting Director. One of Mollett's primary duties was to counsel IRS employees on reasonable accommodations. The IRS policy on reasonable accommodations, with which Mollett was familiar, states that an employee need not specifically mention the words "reasonable accommodation" and that the request for the accommodation need not be written. J.A. 353-55.

Also in January 2002, Brockman became pregnant and was hospitalized for acute pregnancy complications, including bleeding and threatened abortion. Her doctor gave her a medical certificate endorsing her ability to work from home if she remained on bed rest until further notice; there was no indication of how long the bed rest would be necessary. On January 28, 2002, Brockman called Mollett to explain the doctor's instructions and to request permission to work from home.[FN2] On February 5, 2002, Brockman faxed her medical certificate and a note to Mollett again requesting permission to work

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201 Page 5
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

from home.

> FN2. Mollett claims, however, that Brockman only told her that she was sick and did not request to work from home. As this is a motion for summary judgment, we accept Brockman's version of the discussion.

The course of subsequent communications between Brockman and Mollett is disputed. Viewed in the light most favorable to Brockman, she called Mollett almost daily about her request to work from home. Although Brockman relocated during this period, she testified to leaving voicemail messages with both Mollett and Mollett's assistant with her new contact information as well as instructions for bypassing the call-intercept feature of her phone. Brockman denied receiving a faxed letter from Mollett requesting more information about her medical condition and her proposal to work from home, but she does not contest Mollett's claim that the fax was sent. Brockman does acknowledge receiving a fax from Mollett on February 25 denying her request. As grounds for that decision, Mollett noted Brockman's failure to provide medical documentation that Brockman could work during her prescribed bed rest, the difficulties associated with communicating with *205 Brockman by phone and fax, and security concerns in having customer information at Brockman's home.

**2 Brockman filed an EEO complaint on March 23, 2002 to protest the denial of what she viewed as a reasonable accommodation for her pregnancy-related disability. Prior to her scheduled administrative hearing before the EEOC, however, she filed the instant suit charging the IRS with discrimination and retaliation under Title VII, and a failure to accommodate and retaliation under the Rehabilitation Act. The district court, ruling from the bench, granted the IRS's motions for summary judgment on all of Brockman's claims. Regarding Brockman's Title VII claims, the court found that Brockman failed to make out a prima facie case of disparate treatment, and it found that her retaliation claim failed on multiple grounds. The court found that Brockman had not engaged in protected activity under Title VII, had not been subject to an adverse employment action, and had failed to show a causal nexus between the alleged adverse employment action and protected activity. Brockman fared no better on her Rehabilitation Act claims: the district court concluded that Brockman failed to show a disability under the Act and that there was no retaliation in response to her request to work from home. Brockman timely appealed this order.

II.

A.

We turn first to Brockman's claim that she was discriminated against under Title VII. This court reviews a grant of summary judgment de novo. *Med. Waste Assocs. v. Mayor and City Council of Baltimore,* 966 F.2d 148, 150 (4th Cir.1992).

We analyze a disparate treatment case under Title VII under the framework of shifting burdens set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Hux v. City of Newport News,* 451 F.3d 311, 314-15 (4th Cir.2006). First, the plaintiff must establish a prima facie case of discrimination. To make a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the job and performed it satisfactorily; (3) she suffered an adverse employment action; and (4) she was treated differently than similarly situated employees outside of the protected class. *Autry v. N.C. Dep't. of Human Res.,* 820 F.2d 1384, 1385 (4th Cir.1987). If the plaintiff meets these four requirements, the burden then shifts to the employer to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *Hux,* 451 F.3d at 314. If the employer does so, then the plaintiff must prove that this reason was actually a pretext for discrimination. *Id.* at 315.

[1][2] Brockman's disparate treatment claim fails

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

Page 6

because she cannot show an adverse employment action. The standard for an adverse employment action in a disparate treatment case is different than in a retaliation case: in a discrimination case, our precedent mandates that the plaintiff has the higher burden of showing an "ultimate employment" action that affects "hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981).[FN3] *206 Although Brockman was not allowed to work from home, she was not denied leave. It is undisputed that Mollett offered to approve sick leave, but Brockman did not want to take time off. A determination affecting Brockman's ability to work where she chooses is not the type of ultimate decision that this court has required for a prima facie case of discrimination. *See id.* Neither are the other actions attributed to Mollett, such as assigning different projects and failing to return phone calls. *See Munday v. Waste Management of N.A., Inc.,* 126 F.3d 239, 243 (4th Cir.1997) (holding that giving an employee less preferable work assignments, excluding her from meetings, or ignoring her is not enough for an adverse employment action). Finding no adverse employment action, we affirm the district court's grant of summary judgment to the IRS on Brockman's disparate treatment claim.

> FN3. The Supreme Court has recently clarified that a different-and less strenuous-standard is used to define adverse employment actions in the retaliation context. *See Burlington N. & Santa Fe Rwy. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 2413, 165 L.Ed.2d 345 (2006) (explaining that the retaliation provision was intended to protect employees from a broader array of employer actions than the substantive discrimination provisions) (discussed in Part II.B).

B.

**\*\*3** [3] We next consider Brockman's claim that she was retaliated against for engaging in protected activity under Title VII, again under a de novo standard of review.

A retaliation claim under Title VII, like a disparate treatment inquiry, is analyzed under the *McDonnell Douglas* framework set forth above. *See* 411 U.S. at 802-04, 93 S.Ct. 1817. The requirements of the prima facie case of retaliation, however, differ. To make a prima facie case for retaliation under Title VII, Brockman must show that she (1) engaged in protected activity; (2) suffered an adverse employment action; and (3) there is a causal nexus between the protected activity and the adverse action. *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991).

The district court found that Brockman had not engaged in protected activity, as her only involvement in Lewis's claim was serving as a witness. We disagree. Under our precedent, it is clear that acting as a witness in a Title VII claim is protected activity. *Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 259 (4th Cir.1998) ("Activities that constitute participation are ... (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII."). Although Brockman clears this hurdle, however, she still must establish the other elements of the prima facie case and show pretext for the IRS's proffered reason for the adverse action. *See Yashenko v. Harrah's N.C. Casino Co.,* 446 F.3d 541 (4th Cir.2006).

The district court also found that Brockman failed to show an adverse employment action. After the district court ruled in this case, the Supreme Court clarified the requirement for an adverse employment action in the retaliation context. "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *White,* 126 S.Ct. at 2412-13. The scope of what constitutes an adverse employment action for discrimination purposes is not infinite, however: "a plaintiff must show that a reasonable employee would have found the challenged action *materially*

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 8 of 10

217 Fed.Appx. 201                                                                                              Page 7
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (emphasis added) (internal quotations omitted).

In *White,* the Court found that reassignment to a less desirable job and a period of suspension without pay were material. By that standard, many of Brockman's claims-that Mollett failed to respond to Brockman's phone calls, assigned her difficult work, and forced her to walk-do not approach materiality. *See id.* These actions simply would not have dissuaded a reasonable employee from making a discrimination*207 charge. Nonetheless, *White* requires us to separate significant from trivial harms. *See id.* We cannot say, however, that the denial of Brockman's request to work from home might not be a material harm. Because the denial of such a request might deter one from participating in protected activity, we assume, without deciding, that it was an adverse employment action and proceed with our analysis.

**4 [4] Next, Brockman must show a causal nexus between the denial of her request to work from home and her involvement with Lewis's complaint. An employee need not prove causation itself at the prima facie case stage: rather, a close temporal relationship between the protected activity and the adverse action is sufficient to show a causal nexus. *Yashenko,* 446 F.3d at 551 (citing *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989)). We have not decided how close a temporal connection must exist for there to be a causal nexus, but our precedent establishes that several months is sufficiently proximate to satisfy the requirement. *See Cerberonics,* 871 F.2d at 454, 457 (finding that the employee's filing of a discrimination complaint and being fired approximately three months later was sufficiently close to show a causal nexus for the purposes of a prima facie case); *but see Tinsley,* 155 F.3d at 443 (finding that fourteen years is "far too long a period" to satisfy the casual-nexus requirement). Here, Brockman's request to work from home was denied approximately three months after Mollett became aware of her involvement with Lewis's EEO complaint. Again, we will assume without deciding that Brockman satisfies the requirement of a causal nexus and therefore makes a prima facie case of retaliation.

Ultimately, however, Brockman's retaliation claim fails because she does not offer evidence sufficient to show that the IRS's legitimate nondiscriminatory reason for denying her request to work from home was pretextual. Mollett's February 25 letter to Brockman listed several factors on which she based her conclusion that Brockman could not perform her job as well from home: (1) the doctor's order of bed rest was incompatible with Brockman performing her work duties; (2) it was consistently difficult to reach Brockman by either phone or fax; (3) customers complained about service problems from Brockman; and (4) Brockman worked with sensitive EEO complaint information that needed to be secured for privacy purposes. *See* J.A. 399-400. Under our precedent, these are legitimate, nondiscriminatory reasons for denying Brockman's request which Brockman must rebut with evidence of pretext. *See Yashenko,* 446 F.3d at 551.

An employee cannot survive a motion for summary judgment in a retaliation case "by focusing on minor discrepancies that do not cast doubt on the [employer's proffered explanation's] validity." *Hux,* 451 F.3d at 315. Our precedent, and the Supreme Court's, explains that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 317 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[5][6] Here, Brockman attempts to characterize Mollett's failure to respond more quickly to her request as evidence of pretext.[FN4] This is unpersuasive, as Mollett *208 responded in a timely fashion and requested that Brockman provide more information about her medical condition and proposal to work from home. Brockman never provided any medical information to Mollett to indicate that her

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 9 of 10

217 Fed.Appx. 201 Page 8
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

health problems rose to the level of a disability. That Brockman claims not to have received the fax is irrelevant, as it is clear that Mollett attempted to resolve the issue in a timely manner and was stymied by communication problems with Brockman. It is not contested that Mollett attempted to contact Brockman on multiple occasions.[FN5] We note that this very communication problem is one of the reasons that Mollett found it would be inappropriate for Brockman to work from home. At oral argument, Brockman also focused on the fact that Lewis was allowed to work from home as an indicator of pretext; we find this, too, to be unpersuasive, as Innis-not Mollett-granted Lewis's request. Brockman does not raise an issue of material fact with regard to the existence of pretext.

> FN4. Brockman also attempts to construe certain factual inconsistencies in the record as evidence of pretext, such as a dispute over who initiated Mollett's initial meeting with Brockman and Lewis, but these inconsistencies are peripheral and are not sufficiently material to show pretext.

> FN5. Brockman asserts that there were no problems with her phone system, but she does not contest Mollett's assertions that she attempted to contact Brockman via phone and fax.

**\*\*5** We find that Brockman fails to rebut the IRS's legitimate reasons given for denying her request to work from home and therefore does not have a Title VII retaliation claim. Thus, we affirm the district judge's grant of summary judgment to the IRS on this issue.

### III.

[7] We turn next to Brockman's claims under the Rehabilitation Act. Brockman argues that the IRS discriminated against her in violation of the Rehabilitation Act when it refused her a reasonable accommodation for her disability, and she also argues that the IRS retaliated against her for requesting a reasonable accommodation.[FN6] Again, we review the district court's grant of summary judgment to the IRS de novo. *Med. Waste Assocs.*, 966 F.2d at 150.

> FN6. We find that Brockman's Rehabilitation Act retaliation claim fails on the same grounds as does her Title VII retaliation claim. Even if we assume, without deciding, that she can present a prima facie case of retaliation, she does not present sufficient evidence of pretext to raise a genuine issue of material fact that the IRS retaliated against her for requesting a reasonable accommodation for her alleged disability. *See supra* Part II.B. for our complete analysis of the pretext issue.

Our analysis under the Rehabilitation Act ("RA"), like Title VII, follows the *McDonnell Douglas* framework of burden shifting. *See Ennis v. Nat'l Assoc. of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 57 (4th Cir.1995). The RA is also interpreted using the law applicable to the Americans with Disabilities Act. *Myers v. Hose*, 50 F.3d 278, 281 (4th Cir.1995). To make a prima facie case of disability discrimination, Brockman must prove that: (1) she has a disability under the RA; (2) she is qualified for the employment in question; and (3) she suffered an adverse employment action due to discrimination on the basis of disability. *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir.1995). The RA defines an individual with a disability as a person who:

(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;

(ii) has a record of such an impairment; or

(iii) is regarded as having such an impairment.

Rehabilitation Act, 29 U.S.C. § 705(20)(B); Rehabilitation Act, 29 C.F.R. § 1614.203(a)(1). Walking

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

217 Fed.Appx. 201
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62
(Not Selected for publication in the Federal Reporter)
(Cite as: 217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)))

Page 9

is a major life activity under the RA. *209 29 C.F.R. § 1614.203(a)(3). Duration, severity, and permanent or long-term impact of the impairment are all factors used in determining whether an individual is substantially limited in a major life activity. 29 C.F.R. § 1630.2(I). We have not decided whether complications due to pregnancy can constitute a disability under the RA and need not do so here. If an employee does not prove that she is disabled under the RA, she is not entitled to any accommodation. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 271 (4th Cir.2001).

[8] Even if we assume that pregnancy complications may constitute a disability, Brockman's evidence falls far short of showing that she was substantially limited in a major life activity. The only evidence Brockman proffers in this regard is her doctor's note stating that she should be on bed rest "until further notice," and the claim that the doctor orally instructed her not to walk long distances. Significantly, Brockman's own actions directly contradict her assertion that she was substantially limited in walking, as she walked, stood, and performed other normal work functions when she came back to the office of her own accord. It is not enough that her ability to walk be limited-it must be substantially limited. *See* 29 C.F.R. § 1630.2(j)(1). Brockman offers no evidence of the duration of her impairment, nor of its severity,[FN7] both factors that would point to a finding of a substantial limitation. As she does not present sufficient evidence to show that she was substantially limited in a major life activity, Brockman's RA claim fails and we find that the district court's grant of summary judgment was proper on this issue.[FN8]

> FN7. We note that unlike the situation in other types of employment-related claims, it is not the IRS that controlled evidence that would support a finding that Brockman was disabled: any evidence to this effect is under Brockman's exclusive control.

> FN8. The district court approached the analysis of this issue somewhat differently. It assumed, without deciding, that Brockman established a prima facie case, but it concluded that allowing Brockman to work from home would cause an undue hardship for the IRS. We need not reach this step of the analysis as we find that she fails to make a prima facie case under the RA.

IV.

**6 For the foregoing reasons, we affirm the district court's grant of summary judgment to the IRS on all of Brockman's claims. The judgment of the district court is

*AFFIRMED.*

C.A.4 (Md.),2007.
Brockman v. Snow
217 Fed.Appx. 201, 2007 WL 493926 (C.A.4 (Md.)), 99 Fair Empl.Prac.Cas. (BNA) 1409, 19 A.D. Cases 7, 34 NDLR P 62

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.