

47 F.3d 1164
47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.)))

Page 1

C
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. See CTA4 Rule 32.1.

United States Court of Appeals, Fourth Circuit.
Judy C. HARRIS, Plaintiff-Appellant,
v.
James E. CLYBURN, Commissioner; State of South Carolina Human Affairs Commission, a state agency, Defendants-Appellees.
No. 94-1009.

Argued: December 5, 1994.
Decided: February 3, 1995.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Dennis W. Shedd, District Judge. (CA-92-2182)
D.S.C.

AFFIRMED.

ARGUED: William Gary White, III, Columbia, SC, for Appellant. Vance J. Bettis, Gignilliat, Savitz & Bettis, Columbia, SC, for Appellees.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, NIEMEYER, Circuit Judge, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.

OPINION

PER CURIAM:

*1 Judy C. Harris brought suit under Title VII and 42 U.S.C. §§ 1981, 1983 against James E. Clyburn and the State of South Carolina Human Affairs Commission, alleging sexual harassment and racial and sexual discrimination. She also alleged a state claim for intentional infliction of emotional distress. The district court entered summary judgment for the defendants, and this appeal followed. We affirm.

Harris is a black female who has been employed by the South Carolina Human Affairs Commission since April 1973. She was first employed as an accountant and, since 1980, as the accounting manager. Of approximately 50 employees at the Human Affairs Commission, Harris is the highest paid employee after the Commissioner and the Deputy Commissioners.

Harris alleges that since 1974, when James Clyburn was appointed the Commissioner of the Human Affairs Commission, she has been the subject of racial discrimination, sexual discrimination, and sexual harassment by Clyburn. She acknowledges that from the summer of 1966 until 1969, when both she and Clyburn were working for the Charleston County Economic Opportunity Commission's Youth Corps and New Careers programs, she was "romantically involved" with Clyburn and had a consensual affair with him. She also states that the affair resumed for several months in the early 1970's, but she terminated the relationship before Clyburn assumed his position in 1974 as Commissioner of the Human Affairs Commission. Harris alleges that she and Clyburn have not had a physical relationship since then.

According to Harris, Clyburn implicitly made it obvious to her that he wished to resume their physical relationship once he began his tenure as Commissioner. Harris claims that when she rejected Clyburn's subtle advances, Clyburn retaliated by removing and refusing to add necessary support personnel and equipment, relieving her of some of her personnel responsibilities, and generally increasing the pressure she faced in performing her job. Specifically, Harris points to the elimination of one of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

47 F.3d 1164
47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.)))

Page 2

the two assistant positions in her accounting unit and the denial of her request for computers for the accounting unit. The alleged discrimination ended when Clyburn resigned in 1992 to run for Congress, where he now serves.

In her deposition, Harris admitted that Clyburn never *explicitly* asked her to resume any kind of a physical relationship. Harris' only specific example of harassment was that Clyburn occasionally tickled her on the side in the hallway. According to Harris, Clyburn's pursuit was "not a constant thing ... [and was] back and forth." Harris could not remember the last year Clyburn hinted at a resumption of their romantic relationship but stated that it was "quite some time ago." In the 18 years that she worked under Clyburn at the Human Affairs Commission, Harris was never demoted and never applied for a job outside of the Commission.

In 1991 Clyburn created the position of Director of Management Services and Reporting. Harris was one of eight people who applied for the position; there were three blacks and five whites, six males and two females. Clyburn selected Larry Lawrence, a black male, for the position. Harris claims that she "heard," although she cannot remember where, that Lawrence was a golfing buddy of Clyburn's, and Harris alleges that Clyburn specifically designed the qualifications for the position so that she would be denied the opportunity to compete for the position.

*2 Following the selection of Lawrence for the new position, Harris filed a charge of sex discrimination with the EEOC. She alleged that she had not been selected despite the fact that, in her opinion, her qualifications were superior to Lawrence's. Harris subsequently amended her EEOC charge to allege that she was also denied this promotion because of her race. The EEOC issued a no-cause determination on April 30, 1992, rejecting Harris' claim of racial and sexual discrimination. Harris never raised any issue of sexual harassment before the Commission.

Proceeding pro se, Harris commenced this action in the district court. Her amended complaint, which was drafted by an attorney, alleged sexual harassment and race and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, and 42 U.S.C. §§ 1981 & 1983, and intentional infliction of emotional distress. Following discovery, the defendants filed a motion to dismiss and for summary judgment. The district court issued a *Roseboro* [FN*] notice explaining to Harris the summary judgment procedure and directing her to respond to the motion. Harris filed an affidavit in response, and the district court then granted the defendants' motion for summary judgment on all counts. This appeal followed.

Harris' first contention on appeal is that, as a pro se litigant, she was improperly denied a hearing before the district court ruled on the defendants' motion for summary judgment. We disagree. Before the summary judgment motion was filed, Harris had been fully deposed, and, in response to the district court's *Roseboro* order directing her to provide all relevant evidence in opposition to the motion for summary judgment, she submitted an affidavit. Harris has failed to indicate what other evidence she could have provided at a hearing. Under these circumstances, the district court was well within its discretion in ruling without a hearing. *See* D.S.C. R. 12.08.

We next turn to her claims on the merits. In *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986), the Supreme Court held that a plaintiff may establish a violation of Title VII by "proving that discrimination based on sex has created a hostile or abusive work environment." *Id.* at 66. The Court went on to state that for sexual harassment to be actionable, "it must be sufficiently severe or pervasive 'to alter the conditions of the [victim's] employment and create an abusive working environment.'" *Id.* at 67 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). The standards for establishing sexual harassment were further explained in *Harris v. Forklift Systems, Inc.,* 114 S.Ct.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

47 F.3d 1164
47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.)))

Page 3

367 (1993). In *Harris,* the Court held that a Title VII violation requires both "an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive," as well as a subjectively abusive environment, in which the victim "subjectively perceive[s] the enrironment to be abusive." *Id.* at 370. The Court noted, however, that a Title VII violation does not require a serious injury to the person's psychological well-being. *See id.* at 371. The Court in *Harris* also listed a number of factors for determining whether conduct was objectively hostile or abusive, such as: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

*3 Our review of the record considered by the district court discloses that the facts in this case do not rise to the level of conduct necessary to meet the objective prong of *Harris.* Indeed, Harris' only specific factual allegation of sexual harassment is occasional tickling in the hallway. This may be uncomfortable or embarrassing, but it certainly does not qualify as "sufficiently severe or pervasive 'to alter the conditions of the [victim's] employment and create an abusive working environment.' " *Meritor,* 477 U.S. at 67 (quoting *Henson v. City of Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). Harris stated that Clyburn never said anything of a sexual nature to her, never fondled her, never asked her out on a date, and never made any sexually explicit comments. Harris worked for Clyburn for 18 years. In that time, she never complained of his behavior, never applied for another job, and was not demoted. In essence, Harris' allegations merely amount, at best, to suspicions, unspoken slights, and speculations. Under these circumstances, summary judgment was appropriate. In the face of Clyburn's motion for summary judgment, it was incumbent upon Harris to provide evidence establishing an issue of material fact. Other than the tickling, she has failed to provide anything more than subjective conclusions. In addition, on her discrimination claims, she has presented no evidence that either gender or race played a part in any adverse job decision.

With respect to Harris' sexual harassment claim under Title VII, we note additionally that a claim must first be filed with the EEOC. *See King v. Seaboard Coast Line Railroad Co.,* 538 F.2d 581, 583 (4th Cir.1976). Harris' concession that she never filed a charge of sexual harassment with the EEOC provides yet another independent reason for this court to reject her Title VII sexual harassment claim.

Finally, we are satisfied that the district court properly dismissed Harris' state law claim alleging intentional infliction of emotional distress based on the same conduct. As we noted in *Dwyer v. Smith,* 867 F.2d 184 (4th Cir.1989), if the evidence is insufficient for a sexual harassment claim, then the evidence necessarily is insufficient for the state claim on intentional infliction of emotional distress based on the same conduct. *Id.* at 194-95.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*

FN* *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975).

C.A.4 (S.C.),1995.
Harris v. Clyburn
47 F.3d 1164, 1995 WL 56634 (C.A.4 (S.C.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.