Westlaw.
154 Fed.Appx. 361
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.)))

Page 1

C
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Susan J. HORNE, Plaintiff-Appellant,
v.
REZNICK FEDDER & SILVERMAN, Certified Public Accountants, A Professional Corporation, Defendant-Appellee.
No. 05-1025.

Argued Oct. 26, 2005.
Decided Nov. 17, 2005.

**Background:** Former employee sued former employer, alleging race and sex discrimination, and retaliation. The United States District Court for the District of Maryland, William D. Quarles, Jr., J., granted employer's motion for summary judgment, and employee appealed.

**Holdings:** The Court of Appeals held that:
(1) employee failed to show that she was meeting employer's legitimate expectations;
(2) employee failed to present the requisite evidence of discriminatory animus on the part of those who made the decision to terminate her; and
(3) employee failed to demonstrate a causal connection between the protected activity and the adverse employment action, as required to prevail on her retaliation claim.

Affirmed.

West Headnotes

[1] Civil Rights 78 €═1120

78 Civil Rights
　78II Employment Practices
　　78k1120 k. Particular Cases. Most Cited Cases

Civil Rights 78 €═1168

78 Civil Rights
　78II Employment Practices
　　78k1164 Sex Discrimination in General
　　　78k1168 k. Particular Cases. Most Cited Cases
Former employee failed to show that she was meeting employer's legitimate expectations, as required to make a prima facie case of race and sex discrimination; she did not produce a single person who would provide positive feedback about her performance as a tax manager, while the employer produced evidence that every principal who supervised her work as a tax manager considered her performance to be sub-par.

[2] Civil Rights 78 €═1137

78 Civil Rights
　78II Employment Practices
　　78k1137 k. Motive or Intent; Pretext. Most Cited Cases

Civil Rights 78 €═1171

78 Civil Rights
　78II Employment Practices
　　78k1164 Sex Discrimination in General
　　　78k1171 k. Motive or Intent; Pretext. Most Cited Cases
Former employee claiming race and sex discrimination failed to present the requisite evidence of discriminatory animus on the part of those who made the decision to terminate her; an alleged statement, that as the first black female in the tax department, the employee should be careful because she was being closely watched, was made a year and a half prior to her termination, by a person who at the time was not a principal of the firm, who later gave

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

154 Fed.Appx. 361
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.)))

Page 2

her positive evaluations, and who did not participate in the termination decision.

[3] Civil Rights 78 ⊕⇒1252

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases

Civil Rights 78 ⊕⇒1541

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1534 Presumptions, Inferences, and Burden of Proof
            78k1541 k. Retaliation Claims. Most Cited Cases

Former employee claiming retaliation failed to demonstrate the requisite causal connection between the protected activity and the adverse employment action; her only evidence of causation was that she was fired two months after she accused a superior of discrimination, and any inference of causation was more than rebutted by the facts that, prior to the protected activity, the employee had been told that her performance was sub-par and that she should prepare to leave the employer.

*361 Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (CA-03-2638-1-WDQ).**ARGUED**: Lawrence Edward Dubé, Jr., Dube & Goodgal, Baltimore, Maryland, for Appellant. Ari Karen, Krupin O'Brien, L.L.C., Washington, D.C., for Appellee. *362 **ON BRIEF**: Kara M. Maciel, Krupin O'Brien, L.L.C., Washington, D.C., for Appellee.

Before LUTTIG, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).PER CURIAM:

**1 Plaintiff-appellant Susan Horne worked for defendant-appellee Reznick, Fedder & Silverman ("RFS"), an accounting firm, from September 1998 until she was fired on July 3, 2002. From September 1998 until the fall of 2000, Horne was a senior tax accountant. In November 2000, she received an offer to be a tax manager, a position that entailed greater responsibility and a higher salary, at another accounting firm. When she informed RFS of her offer, RFS offered to promote her to tax manager, even though the principals considered the promotion somewhat premature. *See* J.A. 801-807.

In March 2001, two months after Horne began working as a tax manager, Richard Anderson, who was at the time a senior manager,[FN*] allegedly told Horne that as the first black female in the tax department, she should be careful because she was being closely watched. *Id.* at 186. Horne claims that she reported the remark to Caren Lichter, the principal who served as a liaison between managers and principals. *Id.* No action was taken at that time.

> FN* As a senior manager, Anderson did not at this time have supervisory authority over Horne. He was later promoted to principal and supervised some of Horne's work.

After Horne's first year as a tax manager, most of her supervisors, including Anderson, gave her positive evaluations, but some expressed concerns about her performance. *Id.* at 320-42, 955-56. In her second year, as Horne received increasingly complex assignments, more of her supervisors became frustrated with her unsatisfactory performance. *Id.* at 311, 494, 496-97. By the beginning of 2002, the general consensus among the principals that had worked with Horne was that her performance remained at the level expected of associates, not managers. *Id.* at 353, 437, 496, 927-31. In March of 2002, David Norton, Horne's mentor, took her to lunch and told her that she appeared to have

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

154 Fed.Appx. 361
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.)))

Page 3

reached a plateau, that she would have difficulty advancing at RFS, and that it might be time to consider moving on. *Id.* at 357-58.

On April 26, 2002, Horne met with Anderson (now a principal) to discuss a poor performance evaluation he had given her. *Id.* at 362-66. Horne disagreed with Anderson's assessment of her performance and accused him of discrimination. RFS' director of human resources was notified of Horne's allegations and an investigation was initiated. RFS claims that it was at this time that Horne first brought to its attention the comment Anderson had allegedly made a year earlier. RFS' investigation culminated in the conclusion that the allegations of discrimination were groundless. *Id.* at 311.

In June 2002, Horne worked on a major project for David Norton. Horne was assigned to draft a memo that was due on June 28. Norton knew that Horne was scheduled for vacation on June 27 and 28, but told her to complete as much of the memo as she could and that he would finish it. On June 26, Horne told Norton that she was leaving and had not begun the memo, but offered to work on it from home that evening and e-mail Norton her *363 work. *Id.* at 408. The next morning, Horne sent Norton an e-mail stating that she had not been able to get to the memo. *Id.* Norton was forced to work overnight to have the memo ready by the following morning. *Id.* After this incident, Norton recommended to Caren Lichter that Horne be terminated, and the two of them discussed the matter with Mark Einstein, the managing partner of the tax group. *Id.* at 396-98, 521, 527-28, 898. Einstein fired Horne on July 3, 2002.

**2 On April 17, 2003, Horne filed a complaint against RFS alleging race and sex discrimination, as well as retaliation. The district court granted RFS' motion for summary judgment as to all three claims, concluding that Horne failed to make out a prima facie case of race or sex discrimination because she did not show that she was meeting RFS' legitimate expectations, *id.* at 167, and that she failed to make out a prima facie case of retaliation because she did not show a causal connection between her complaints about discrimination and her termination, *id.* at 168-69. This appeal followed. Finding no reversible error, we affirm the judgment of the district court.

I.

[1] The district court did not err in granting summary judgment to RFS on Horne's race and sex discrimination claims. The district court correctly concluded that Horne did not satisfy prong three of her prima facie case because she did not show that she was meeting RFS' legitimate expectations. *See* J.A. at 167. Horne did not produce a single person who would provide positive feedback about her performance as a tax manager, whereas RFS produced evidence that every principal who supervised Horne's work as a tax manager considered her performance to be sub-par. *See id.* at 397. Horne's evidence consists of her own assertions that she was performing adequately or that any inadequacies in her performance did not merit termination. Such subjective self-assessments from Horne are not sufficient to sustain her burden of showing that she was meeting RFS' legitimate expectations. *See Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980) ("[Plaintiff's] perception of himself ... is not relevant. It is the perception of the decision maker which is relevant."). Indeed, Horne concedes that in March 2002-four months prior to her termination and prior to the negative review by Anderson that led her to accuse him of discrimination-David Norton took her to lunch and told her that she "was not recognizing issues," that "the Seniors were on [her] toes," that she "was not managing accounts the way [she] should," that she "need[ed] to get it together in the next 3 to 6 months," and that she should "get up to speed to where [she] should be so that [she] could leave RFS on a high note." *Id.* at 196-97. Moreover, Horne does not dispute that she failed to complete the memo for David Norton, forcing him to work through the night to complete it in time to meet the deadline. Mark Einstein, the managing partner, testified that this was "an egregious act that

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 5 of 6

154 Fed.Appx. 361
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.)))

Page 4

could potentially support termination even if [Horne's] employment had not been unsatisfactory." *Id.* at 397. Horne simply has no basis for claiming that she was meeting RFS' legitimate expectations.

[2] Even if Horne had shown that she was performing satisfactorily as a tax manager, her discrimination claims would still fail as a matter of law because she presented no evidence of discriminatory animus on the part of those who made the decision to terminate her. RFS presented uncontroverted evidence that the decision to terminate Horne was made by David Norton, Caren Lichter, and Mark Einstein,*364 and Horne presented no evidence-and indeed does not even argue-that these individuals were motivated by a discriminatory animus. Horne's only claim is that their decision to fire her was "supported by" the negative feedback Anderson had given, which feedback, she says, was motivated by discrimination, as evidenced by Anderson's earlier alleged remark that Horne was being closely watched because she was a black female. That the decision may have been "supported by" Anderson's negative appraisals of her work (which were in general accord with the appraisals of others for whom she had worked) does not remotely establish that Anderson "possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer," as required by this court's decision in *Hill v. Lockheed Martin Logistics Management,* 354 F.3d 277, 291 (4th Cir.2004) (*en banc* ). In sum, Anderson's alleged remark is the only evidence Horne musters that even arguably shows that anyone at RFS harbored a discriminatory animus toward her, and that statement, made a year and a half prior to Horne's termination by a person who at the time was not a principal of the firm, who later gave her positive evaluations, and who did not participate in the termination decision, is insufficient to sustain Horne's burden of showing that the decision to fire her was the product of discrimination.

II.

**3 [3] The district court did not err in granting summary judgment to RFS on Horne's retaliation claim. Prong three of the retaliation prima facie case requires plaintiffs to demonstrate a causal connection between the protected activity and the adverse employment action. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 443 (4th Cir.1998). The district court correctly concluded that Horne failed to produce sufficient evidence of such a causal connection. J.A. 168-69. Horne's only evidence of causation is that she was fired two months after she accused Anderson of discrimination. However, this court has previously noted that a lapse of two months between the protected activity and the adverse action is "sufficiently long so as to weaken significantly the inference of causation." *King v. Rumsfeld,* 328 F.3d 145, 151 n. 5 (4th Cir.2003). And here, any inference of causation that might arise out of the temporal proximity is more than rebutted by the facts that, prior to the protected activity, Horne had been told that her performance was sub-par and that she should prepare to leave RFS, *see McLee v. Chrysler Corp.,* 109 F.3d 130, 136 (2d Cir.1997) ("[S]ince ... [the defendant] was preparing to discharge [the plaintiff] before [the plaintiff] contacted any of the civil rights offices, it is not a permissible inference that [the plaintiff] was discharged because he contacted those offices."), and that Horne's poor performance continued-and the incident with Norton occurred-after her complaints about discrimination, *see Kodengada v. Int'l Bus. Mach. Corp.,* 88 F.Supp.2d 236, 245 (S.D.N.Y.2000) (intervening incidents of misconduct broke the chain of causation); *Hite v. Biomet, Inc.,* 38 F.Supp.2d 720, 743 (N.D.Ind.1999) (no causal connection where, during the two-month lapse between the protected activity and the termination, plaintiff failed to report to work).

CONCLUSION

The district court correctly granted summary judgment to RFS on Horne's race and sex discrimination claims because Horne failed to create a genuine issue of material fact as to whether she was meeting

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

154 Fed.Appx. 361
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.)))

RFS' legitimate expectations or as to whether the individuals who made the decision*365 to fire her were motivated by a discriminatory animus. The district court correctly granted summary judgment to RFS on Horne's retaliation claim because Horne failed to show any causal connection between her complaints about discrimination and her termination. Accordingly, the judgment of the district court is affirmed.

*AFFIRMED*

C.A.4 (Md.),2005.
Horne v. Reznick Fedder & Silverman
154 Fed.Appx. 361, 2005 WL 3076921 (C.A.4 (Md.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.