

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 1

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Joyce M. REESE, Plaintiff-Appellant,
and
James Steven Reese, Plaintiff,
v.
MERITOR AUTOMOTIVE, INCORPORATED, Defendant-Appellee,
and
John Robert Parr, Individually, Defendant.
No. 00-1604.

Argued Jan. 24, 2001.
Decided March 8, 2001.

Employee sued employer under Title VII for sexual harassment, and under state law for negligent infliction of emotional distress. The United States District Court for the Western District of North Carolina, Lacy H. Thornburg, J., granted summary judgment to employer, and employee appealed. The Court of Appeals held that: (1) employer took reasonable steps to prevent sexual harassment; (2) employer's knowledge that manager and employee were spending time together did not give rise to a duty to inquire about their relationship; (3) employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer; and (4) employer was not liable under North Carolina law on theory of negligent infliction of emotional distress.

Affirmed.

West Headnotes

[1] Civil Rights 78 ⇐1185

78 Civil Rights
   78II Employment Practices
      78k1181 Sexual Harassment; Work Environment
         78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases
   (Formerly 78k167)
To prevail on a Title VII hostile work environment claim, employee must establish four elements: (1) unwelcome conduct, (2) based on employee's gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to the employer. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[2] Civil Rights 78 ⇐1189

78 Civil Rights
   78II Employment Practices
      78k1181 Sexual Harassment; Work Environment
         78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
   (Formerly 78k167)

Civil Rights 78 ⇐1528

78 Civil Rights
   78IV Remedies Under Federal Employment Discrimination Statutes
     78k1526 Persons Liable
        78k1528 k. Vicarious Liability; Respondeat Superior. Most Cited Cases
   (Formerly 78k371)
The affirmative defense of *Faragher* and *Ellerth* permits an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no adverse tangible employment action was taken, and if the employer is entitled to raise the affirmative defense, it must establish two elements: (1) that the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 2

employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[3] Civil Rights 78 ⇌1189

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
    (Formerly 78k167)
Employer's dissemination of an effective anti-harassment policy provides compelling proof that an employer has exercised reasonable care to prevent and correct sexual harassment, but evidence that the policy was adopted or implemented in bad faith or that the policy was deficient rebuts this proof. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[4] Civil Rights 78 ⇌1189

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
    (Formerly 78k167)

Federal Civil Procedure 170A ⇌2497.1

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2497 Employees and Employment Discrimination, Actions Involving
                    170Ak2497.1 k. In General. Most Cited Cases

In light of employer's written policy concerning sexual harassment and employee's experience with the policy, indicating that it was quite effective, employer took reasonable steps to prevent sexual harassment, as an element of the affirmative defense to employee's claim against employer based on harassment by manager, and other employees' affidavits, replete with hearsay and often conclusory, could not create a genuine issue of material fact on the issue. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[5] Civil Rights 78 ⇌1189

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
    (Formerly 78k167)
Employer's knowledge that male manager and female employee were spending time together did not give rise to a duty under Title VII to inquire about their relationship, as to whether it was consensual, especially where the two, long before the alleged sexual harassment began, were on very friendly terms and conversed about almost anything. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[6] Civil Rights 78 ⇌1189

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
    (Formerly 78k167)
Evidence that an employee failed to utilize the employer's complaint procedure concerning sexual harassment will normally suffice to satisfy the employer's burden under the second element of the affirmative defense to liability for harassment by another employee, and the inevitable unpleasantness

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 3

in making such a complaint cannot excuse an employee from taking advantage of the employer's complaint procedure. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[7] Civil Rights 78 €→1189

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
    (Formerly 78k167)
Employer established the second prong of the affirmative defense to liability for sexual harassment of employee by a manager, that the employee unreasonably failed to take advantage of preventative or corrective opportunities provided by the employer, where employee was very familiar with the complaint procedure, yet over six months passed before she advised employer of the problem. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[8] Damages 115 €→57.14

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.13 Negligent Infliction of Emotional Distress
                    115k57.14 k. In General. Most Cited Cases
    (Formerly 115k49.10)
Under North Carolina law, to prove negligent infliction of emotional distress a plaintiff must establish that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress, and (3) the conduct did in fact cause the plaintiff severe emotional distress.

[9] Damages 115 €→57.55

115 Damages
    115III Grounds and Subjects of Compensatory Damages
        115III(A) Direct or Remote, Contingent, or Prospective Consequences or Losses
            115III(A)2 Mental Suffering and Emotional Distress
                115k57.50 Labor and Employment
                    115k57.55 k. Sex and Gender. Most Cited Cases
    (Formerly 115k49.10)
Employer was not liable under North Carolina law for negligent infliction of emotional distress, based on sexual harassment of employee by a manager, where the employer exercised reasonable care to prevent and correct sexually harassing behavior, and employee unreasonably failed to take advantage of preventative or corrective opportunities to avoid the harm.

*241 Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (CA-99-56-1-T).Patricia Michelle Rippon, Van Winkle, Buck, Wall, Starnes & Davis, P.A., Asheville, NC, for appellant. Margaret Hutchins Campbell, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Atlanta, GA, for appellee. ON BRIEF: A. Bruce Clarke, Raleigh, NC, for appellee.

Before MOTZ and TRAXLER, Circuit JJ., and HOWARD, United StatesDistrict J. for the Eastern District of North Carolina, sitting by designation.

OPINION

PER CURIAM.

**1 Joyce M. Reese appeals from a grant of summary judgment in favor of Meritor Automotive, Inc. ("Meritor") on her Title VII sexual harassment claim and her state-law negligent infliction of emo-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 4

tional distress claim. We affirm.

I.

Meritor is a corporation that manufactures automotive components. In 1993, Meritor hired Reese as a machinist. The incidents giving rise to the present case, viewed in the light most favorable to Reese, began in October 1997 when John Parr, Meritor's maintenance facility manager, approached Reese about his suspicions that she was using drugs. Parr and Reese had been on friendly terms before this meeting, often chatting about automobile racing and fishing. Reese described Parr as a person with whom she could "talk ... about almost anything." J.A. 277. Parr informed Reese that he was aware she was using the methamphetamine "crank," but assured Reese that he would not report her because he was fond of her. Reese interpreted Parr's remarks as a demand for sexual favors in exchange for Parr's silence.

Approximately one week later, at Parr's behest, Reese accompanied Parr to his office. Parr then turned off the lights and made advances which included pulling down Reese's coveralls and fondling her. After this incident Parr began to visit Reese at her work station. He often took her to secluded parts of the plant where he would kiss and fondle her. Parr told Reese that he loved her, promised to leave his wife, and asked Reese to leave her husband. Parr even promised to kill Reese's husband if she would just make the request.

Reese contacted Meritor's Employee Assistance Program about her drug addiction and entered an area hospital for drug rehabilitation on November 3, 1997. Reese was placed on paid leave and did not return to work until February 23, 1998. While Reese was undergoing inpatient and outpatient treatment Parr continued to express interest in her. Parr even arranged for Reese's paycheck to be delivered to him so he would have an excuse to see her. Parr also called Reese at home and had forced her vehicle off the highway so he could talk with her.

Parr's involvement with Reese continued upon her return to work. Reese frequently found love letters from Parr in her locker and his visits to her work station increased. In early April 1998 Mark Turner, Reese's direct supervisor, confronted Reese about her poor time management. Turner informed Reese that her lengthy breaks were hampering her productivity *242 and that she needed to modify her behavior. Fearing for her job, Reese explained that she was unable to stop Parr's constant visits; however, she did not mention that Parr's interest in her was unwelcome.

Having identified Parr as a contributor to Reese's poor time management, Turner spoke with him and asked him to visit Reese less often. Parr complied with this request for a short while, but then resumed his previous pattern of behavior. Consequently, Reese's time away from her work station again caught management's eye.

**2 On May 14 Turner spoke with Reese about her recurrent problems with time management. During this conversation Reese began to cry, showed Turner a letter Parr had given her, and asked that Parr be kept away from her. Turner forwarded the letter to Meritor's manufacturing manager Fred Harbinson, and Meritor suspended Parr the next day. Approximately one month later, Parr and Meritor entered into a separation agreement under which Parr took early retirement and agreed never to "contact, communicate with, or approach ... Joyce Reese or any member of her immediate family." J.A. 1101.

During the time which Parr beset Reese, Meritor had in place a written policy against sexual harassment. Meritor's employee handbook, which was given to Reese when she was hired, prohibited "unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature." J.A. 597. The policy encouraged employees to report harassment to management, and Meritor conducted annual classes on sexual harassment in the workplace.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 5

Reese was well-versed in Meritor's sexual harassment policy. In 1995, she had reported a co-worker to Turner for making sexual advances. Meritor promptly dealt with the situation and the harassment ceased. In 1996, Reese herself was reported for telling an off-color joke that offended a co-worker. Meritor reprimanded Reese for this behavior.

Reese filed suit against Meritor and Parr in March 1999.[FN*] As to Meritor, Reese alleged a violation of Title VII and negligent infliction of emotional distress. At the close of discovery the district court granted Meritor's motion for summary judgment. Viewing the evidence in a light most favorable to Reese, the district court concluded that Meritor had established both prongs of the affirmative defense outlined in *Faragher v. City of Boca Raton,* 524 U.S. 775, 807-08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 764-65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In addition, the court found that Meritor was not negligent in its handling of the harassment complaint. Reese appeals.

> FN* This appeal concerns only the claims against Meritor.

II.

A summary judgment motion should be granted only if there is no genuine dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

[1] To prevail on a Title VII hostile work environment claim, Reese must establish *243 four elements: (1) unwelcome conduct, (2) based on Reese's gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to Meritor. *See Smith v. First Union Nat'l Bank,* 202 F.3d 234, 241 (4th Cir.2000). The district court assumed the first three elements had been established, but granted summary judgment on the fourth element. Accordingly, this case hinges on whether liability for Parr's conduct is imputable to Meritor.

**3 [2] The affirmative defense of *Faragher* and *Ellerth* permits an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no adverse tangible employment action was taken. *See Faragher,* 524 U.S. at 808; *Ellerth,* 524 U.S. at 765. Examples of adverse tangible employment action include "discharge, demotion, or undesirable reassignment." *Faragher,* 524 U.S. at 808; *Ellerth,* 524 U.S. at 765. If entitled to raise the affirmative defense, the employer must establish two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher,* 524 U.S. at 807; *Ellerth,* 524 U.S. at 765. Because Reese does not claim that Meritor took adverse tangible employment action against her, Meritor is permitted to raise the affirmative defense.

A.

[3] Reese argues that Meritor did not take reasonable care to prevent and correct sexually harassing behavior because Meritor's anti-harassment policy was not an effective preventative program. In this circuit, dissemination of "an effective anti-harassment policy provides compelling proof" that an employer has exercised reasonable care to prevent and correct sexual harassment. *Lissau v. Southern Food Serv., Inc.,* 159 F.3d 177, 182 (4th Cir.1998). Evidence that the policy was adopted or

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

implemented in bad faith or that the policy was deficient rebuts this proof. *See Brown v. Perry,* 184 F.3d 388, 396 (4th Cir.1999).

[4] Reese concedes that Meritor had in place a written policy against sexual harassment that prohibited "unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature." J.A. 597. The policy encouraged an employee experiencing sexual harassment to "bring it to the attention of his or her supervisor, the Personnel Department or any other member of management." J.A. 597. In case the employee felt uncomfortable reporting the harassment to officials inside the plant, Meritor provided a toll-free hotline for employees to report the harassment to corporate headquarters.

Furthermore, Reese's experience with Meritor's sexual harassment policy indicates that it was quite effective. In 1995, Reese reported a co-worker to Turner for making sexual advances. Though Reese described the co-worker as merely "infatuated" with her and did not believe she was being harassed, Meritor recognized the unwelcome conduct as sexual harassment. J.A. 837. Turner explained to Reese that the co-worker's conduct was inappropriate and violated Meritor's policy against such harassment. Meritor promptly dealt with the situation and the harassment ceased. In 1996, Reese was reported for telling an off-color joke that offended a co-worker. Meritor reprimanded Reese for this behavior and explained that the workplace was an improper setting for ribald humor.

*244 **4 In an effort to paint Meritor's policy as dysfunctional, Reese offers the declarations of three former Meritor employees. In the main, the affidavits state that those who report sexual harassment are ostracized by co-workers and that management somehow creates an environment conducive to harassment. Replete with hearsay and often conclusory, the affidavits cannot create a genuine issue of material fact. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996) (noting that conclusory affidavit cannot defeat summary judgment); *Maryland Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1251 (4th Cir.1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment"); *see also Anderson,* 477 U.S. at 251 (a scintilla of evidence is insufficient to bar summary judgment). In light of the written policy in effect and Reese's experience with the policy, we conclude that Meritor took reasonable steps to prevent sexual harassment.

Reese also alleges that Meritor did not act promptly to correct Parr's behavior. According to Reese, Meritor knew about the sexual harassment for months but did nothing to stop it. However, at deposition Reese admitted that May 14 was the first time she ever alerted management that Parr's attentions were unwelcome. On that day Turner spoke with Reese about her continued problems with time management. During this conversation Reese was overcome with emotion and indicated that Parr's attentions were unwanted. Meritor suspended Parr the next day and approximately one month later Parr took early retirement conditioned on his promise to never again approach Reese or her family.

[5] In the face of this evidence of swift corrective action, Reese argues that Meritor should have suspected sexual harassment from the fact that Parr was taking her away from her work station for extended periods. At the very least, Reese asserts, Meritor should have inquired whether her relationship with Parr was consensual. We disagree that Meritor's knowledge that Parr and Reese were spending time together gave rise to a duty to inquire about their relationship. The questions Reese insists that Meritor should have asked are intrusive and might easily entangle Meritor with the private lives of its employees. *See Ellerth,* 524 U.S. at 770 (Thomas, J., dissenting) (concerns of privacy dictate that in the quest to prevent sexual harassment an employer should not be required to take "extraordinary measures" and intrusive measures "that would revolutionize the workplace in a manner incompatible with a free society"). The simple

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

Page 7

fact that two people spend an inordinate amount of time together does not give rise to a duty on the part of the employer to pry into the nature of the relationship. This is especially true in this case when Parr and Reese, long before the alleged harassment began, were on very friendly terms and conversed "about almost anything." J.A. 277. Accordingly, we conclude that Meritor took reasonable care to correct promptly the inappropriate behavior.

B.

**5 [6] Reese argues that her reluctance to report Parr's conduct was not unreasonable. Reese again avers that Meritor was aware of the harassment because Reese was spending so much time with Parr and therefore her going to management would have accomplished nothing. In this circuit, "evidence that the plaintiff failed to utilize the company's complaint procedure will normally suffice to satisfy [the company's] burden under the second element of *245 the defense." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 267-68 (4th Cir.2001) (internal quotation marks omitted) (alteration in original). For Title VII's prohibitions against sexual harassment to function properly, it is incumbent upon employees to report improper behavior. See Faragher, 524 U.S. at 806 (observing "that a victim [of sexual harassment] has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute") (internal quotation marks omitted); Parkins v. Civil Constructors of Ill., Inc., 163 F.3d 1027, 1038 (7th Cir.1998) (explaining that "the law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists") (internal quotation marks omitted).

We understand that an employee might be embarrassed to discuss sexual harassment with company officials. Such matters are of a delicate nature, making the employee hesitant to broach the subject. "Nevertheless, this 'inevitable unpleasantness' cannot excuse an employee from taking advantage of [the] employer's complaint procedure." Barrett, 240 F.3d at 268 (4th Cir.2001). The effects of excusing failures to report would be far reaching and inconsistent with Title VII's goal of purging the workplace of sexual harassment. The harasser's conduct would continue unabated, leading the harasser and other employees to conclude that such behavior is acceptable.

[7] Though Parr's advances began in October 1997, Reese did not inform Meritor that Parr's attention was unwelcome until May 14, 1998. Reese was very familiar with the complaint procedure, yet over six months passed before she advised Meritor of the problem. As previously discussed, Meritor's knowledge that Reese and Parr were taking extended breaks together does not give rise to constructive notice of sexual harassment. Accordingly, Meritor has established the second prong of the affirmative defense.

III.

[8] The district court also granted summary judgment on Reese's negligent infliction of emotional distress claim. Reese alleges that her emotional distress is causally connected to Parr's harassment as well as Meritor's failure to investigate her complaints and take corrective action. Under North Carolina law, to prove negligent infliction of emotional distress a plaintiff must establish "that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress ..., and (3) the conduct did in fact cause the plaintiff severe emotional distress." Johnson v. Ruark Obstetrics & Gynecology Assocs., 327 N.C. 283, 395 S.E.2d 85, 97 (1990).

**6 [9] Like the district court, we see no evidence that Meritor acted negligently. Meritor exercised reasonable care to prevent and correct sexually harassing behavior, and Reese unreasonably failed to take advantage of preventative or corrective oppor-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Fed.Appx. 239
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.)))

tunities to avoid the harm. Hence, Reese cannot establish the first element of her negligent infliction of emotional distress claim.

### IV.

For the foregoing reasons, we affirm the district court's decision granting summary judgment to Meritor on Reese's Title VII claim and her negligent infliction of emotional distress claim.

*AFFIRMED.*

C.A.4 (N.C.),2001.
Reese v. Meritor Automotive, Inc.
5 Fed.Appx. 239, 2001 WL 227329 (C.A.4 (N.C.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.