

115 Fed.Appx. 119
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.)))

Page 1

▷
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fourth Circuit Rule 32.1 (Find CTA4 Rule 32.1)

United States Court of Appeals,
Fourth Circuit.
Mary Ann SINGLETON, Plaintiff-Appellant,
v.
DEPARTMENT OF CORRECTIONAL EDUCATION; Commonwealth of Virginia, Defendants-Appellees.
No. 03-2160.

Argued June 3, 2004.
Decided Nov. 17, 2004.

**Background:** Employee sued her employer, the Virginia Department of Correctional Education (DCE), alleging sexual harassment and retaliation in violation of Title VII. The United States District Court for the Western District of Virginia, James P. Jones, J., granted a defense motion for summary judgment, and the employee appealed.

**Holding:** The Court of Appeals, Hansen, Senior Circuit Judge, held that the conduct alleged did not constitute sexual harassment.
Affirmed.

West Headnotes

**Civil Rights 78 €⇒1185**

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1185 k. Hostile Environment; Severity, Pervasiveness, and Frequency. Most Cited Cases

Employee of the Virginia Department of Correctional Education (DCE) failed to show, in support of a Title VII sexual harassment claim, that the offending conduct was sufficiently severe or pervasive to alter the conditions of her employment; allegations that a coworker made offensive comments, showed her unwanted attention that made her uncomfortable, and continuously expressed a sexual interest in her did not meet the high standard set forth under Title VII. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*119 Appeal from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, District Judge. (CA-03-4-1).Daniel Robert Bieger, Copeland & Bieger, P.C., Abingdon, Virginia, for Appellant.

Sydney E. Rab, Senior Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Appellees.

Hilary K. Johnson, Abingdon, Virginia, for Appellant.

Before WILKINS, Chief Judge, WILLIAMS, Circuit Judge, and DAVID R. HANSEN, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by unpublished opinion. Senior Judge Hansen wrote the opinion, in which Chief Judge Wilkins and Judge Williams joined.
Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).HANSEN, Senior Circuit Judge.

**1 Mary Ann Singleton brought this action against her employer, the Virginia Department of Correctional Education ("DCE"), alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 3 of 6

115 Fed.Appx. 119 Page 2
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.)))

2000e-17 (2000). Mrs. Singleton now appeals the district court's grant of the defendant's motion for summary judgment. For the reasons set forth below, we affirm.

I.

We state the facts in the light most favorable to Mrs. Singleton. *120*Anderson v. G.D.C., Inc.,* 281 F.3d 452, 455 (4th Cir.2002). In July 2000, Mrs. Singleton began employment as the librarian at the DCE library facility, located at the Keen Mountain Correctional Center, a maximum security prison located in Tazewell County, Virginia, and operated by the Virginia Department of Corrections ("DOC"). As librarian, Mrs. Singleton was employed by the DCE, which is a department organizationally separate from the DOC. Both the DOC and the DCE are within Virginia's Executive Branch and are responsible to the Secretary of Public Safety. Her responsibilities included the maintenance, purchase, and processing of library materials, and training inmate workers. She had a personal office located within the DCE library, which was within the prison. She was not responsible for the prison's law library. (J.A. at 40-41, 169.)

Mrs. Singleton alleges that almost immediately after she began employment, Elmer E. "Gene" Shinault ("Shinault"), assistant warden for operations and an employee of the DOC, began sexually harassing her. Because assistant warden Shinault worked for the DOC, not the DCE, he was not Mrs. Singleton's supervisor, and Mrs. Singleton felt that most of her interactions with Shinault were unnecessary. The offending conduct complained about occurred approximately four times a week from July 2000 until about October 2001. Mrs. Singleton complained that Shinault: engaged in a conversation with Mrs. Singleton's DCE supervisor in which Shinault stated that Mrs. Singleton should be "spanked" every day; [FN1] insistently complimented Mrs. Singleton; stared at her breasts when he spoke to her; on one occasion, he measured the length of her skirt to judge its compliance with the prison's dress code and told her that it looked "real good"; constantly told her how attractive he found her; made references to his physical fitness, considering his advanced age; asked Mrs. Singleton if he made her nervous (she answered "yes"); and repeatedly remarked to Mrs. Singleton that if he had a wife as attractive as Mrs. Singleton, he would not permit her to work in a prison facility around so many inmates.

> FN1. Gene Shinault allegedly said to DCE Principal George Erps, in Mrs. Singleton's presence, "Look at her. I bet you have to spank her every day." Erps then laughed and said, "No. I probably should, but I don't." Shinault replied, "Well, I know I would." (J.A. at 29.)

At some point, Shinault was permitted to act as Mrs. Singleton's supervisor, even though he worked for the DOC, not the DCE.[FN2] Shinault improperly requested access to Mrs. Singleton's leave records. He also had a security camera installed in her office in a way that permitted him to observe her as she worked, supposedly for safety reasons, but which did not permit him to observe the prison library or any interactions with inmates that she might have had while she was not sitting at her desk. (J.A. at 30.) The record suggests this was the only security camera installed in the DCE library. (J.A. at 153.)

> FN2. On January 11, 2001, the prison warden circulated a memo that stated that DCE was thereafter under the direct supervision of Shinault, (J.A. at 156-B), even though Shinault was a DOC employee, and the DOC, in reality, could not "supervise" a DCE employee.

**2 Soon after it began happening, Mrs. Singleton reported the harassment to her immediate DCE supervisor, George Erps, whose office was also located at the prison. Mrs. Singleton wanted it to be made clear to Shinault that if Shinault had any problems with Mrs. Singleton, Shinault should go to Erps. Erps did nothing to stop the harassment.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

115 Fed.Appx. 119
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.)))

Page 3

On one occasion, he responded, "Boys will be boys." With respect to *121 the spanking conversation, he seemed to participate in the offensive conduct. Several other DCE employees [FN3] witnessed either Shinault's offensive behavior or Mrs. Singleton's complaints to Erps. Mrs. Singleton did not make a formal allegation of sexual harassment, and she did not report the conduct to anyone else. She was under the mistaken impression that she was not permitted to make a formal complaint because she was a probationary employee for the first year of employment.

> FN3. The other employees were Constance Sparks, Erps's secretary; Jimmy Yates, a custodial maintenance teacher; Tina Spradling, an Academic Instructor; and Mike Spradling, assistant warden of programs.

On October 15, 2001, Mrs. Singleton sent a memorandum to Erps and carbon-copied the memo to Wallace Sterling, DCE deputy superintendent in Richmond. (J.A. at 27.) In the memo, she reminded Erps of the problems she was having with Shinault. When she met with Erps after sending the memo, Erps seemed upset that she had also sent the memo to Sterling. At a meeting with Mrs. Singleton and other DCE teachers later that day, Erps told the employees that, in the future, they should not contact the DCE in Richmond without advising him first.

In November 2001, Seward McGhee, of the Office of the Director of Internal Affairs and Audit for the *DCE*, began an investigation. His report concluded that Shinault had harassed Mrs. Singleton, that Erps was aware of the harassment, that Erps had placed DCE in jeopardy by not taking any action to remedy it, and that Erps had interfered with the investigation by telling employees not to talk with officials investigating the allegations. (J.A. at 61-80.) The report also concluded that the harassment was common knowledge among employees.[FN4]

> FN4. Erps was ultimately issued a written reprimand and moved to another facility. The Office of the Inspector General for the *DOC* found that most of the allegations against Shinault could not be verified, with the exception of the "spanking" incident. Shinault "[was] counseled and advised to refrain from making comments that are inappropriate in the workplace" and asked to behave in a businesslike and professional manner. (J.A. at 132.)

In January 2003, Mrs. Singleton filed suit in the United States District Court for the Western District of Virginia.[FN5] In her complaint, she alleged hostile environment sexual harassment and retaliation. On August 21, 2003, the district court granted the DCE's motion for summary judgment on both claims. Mrs. Singleton now appeals the district court's adverse grant of summary judgment on the sexual harassment claim.

> FN5. Mrs. Singleton filed administratively with the Equal Employment Opportunity Commission ("EEOC") on April 30, 2002, and received her right to sue letter on October 21, 2002.

II.

We review a district court's grant of summary judgment de novo, and we view the facts in the light most favorable to the non-moving party, Mrs. Singleton. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 766 (4th Cir.), *cert. denied,* 540 U.S. 940, 124 S.Ct. 301, 157 L.Ed.2d 253 (2003).

"Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *Ocheltree v. Scollon Prod., Inc.,* 335 F.3d 325, 331 (4th Cir.2003) (en banc) (internal marks and citation omitted) (alterations in original), *cert. denied,* *122 540 U.S. 1177, 124 S.Ct. 1406, 1411, 158 L.Ed.2d 77 (2004). An employer violates Title VII "[w]hen the workplace is permeated with discrimin-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Page 5 of 6

115 Fed.Appx. 119
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.)))

Page 4

atory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted).

**3 In order to establish that she has an actionable claim for sexual harassment in the workplace under Title VII, Mrs. Singleton was required to demonstrate that the offensive conduct "(1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ocheltree,* 335 F.3d at 331; *see also Anderson,* 281 F.3d at 458. We conclude that the district court correctly granted summary judgment because Mrs. Singleton did not show that the offending conduct "was sufficiently severe or pervasive to alter the conditions of her employment." *Ocheltree,* 335 F.3d at 331.

Under Title VII, the standard for establishing that the offending behavior constituted sexual harassment is rather high. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. We determine whether a work environment is sufficiently hostile "by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. Boca Raton,* 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal marks omitted) (quoting *Harris,* 510 U.S. at 23, 114 S.Ct. 367). It is established that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788, 118 S.Ct. 2275 (internal marks and citation omitted). Title VII is not intended to serve as a workplace civility code. *Id; see also Anderson,* 281 F.3d at 459 (noting that Title VII "is not designed to purge the workplace of vulgarity") (internal quotation omitted); *E.E.O.C. v. R & R Ventures,* 244 F.3d 334, 339 (4th Cir.2001) ("Boorish behavior may exist apart from any propensity to discriminate.")

After careful review, we conclude that Mrs. Singleton's allegations that Shinault made offensive comments, showed her unwanted attention that made her uncomfortable, and continuously expressed a sexual interest in her do not meet the high standard set forth under Title VII. The conduct that she complains of, though boorish and offensive, is more comparable to the kind of rude behavior, teasing, and offhand comments that we have held are not sufficiently severe and pervasive to constitute actionable sexual harassment. *See, e.g., Hartsell v. Duplex Prod., Inc.,* 123 F.3d 766, 773 (4th Cir.1997) (holding that comments about a woman's looks and comments demeaning to women were not sufficiently severe and pervasive). Mrs. Singleton does not allege that Shinault ever requested a sexual act, touched her inappropriately, discussed sexual subjects, showed her obscene materials, told her vulgar jokes, or threatened her. Nor does Mrs. Singleton allege that his behavior interfered with her ability to perform her job. Her showing is insufficient to meet the "severe and pervasive" standard. *See*\*123 *Bass,* 324 F.3d at 765 (holding that alleged conduct was not sufficiently severe and pervasive where the facts suggested a workplace dispute and "callous behavior" by supervisors); *Hartsell,* 123 F.3d at 773 (holding that conduct was not severe and pervasive where there was no inappropriate touching, defendant never propositioned plaintiff, and "[n]one of the alleged comments were even vulgar, much less obscene"); *see also Baskerville v. Culligan Int'l Co.,* 50 F.3d 428, 431 (7th Cir.1995) (holding that alleged conduct was not sufficiently severe and pervasive where the defendant never touched plaintiff, never invited plaintiff out on a

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

115 Fed.Appx. 119
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.)))

date, never asked to her have sex with the defendant, never exposed himself, and never showed the plaintiff obscene materials). While a work environment filled with ridicule, intimidation, and remarks that maliciously demean the status of women can be hostile and abusive, even where a woman is not explicitly subject to sexual advances or propositions, *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 242 (4th Cir.2000), the circumstances here, viewed in a light most favorable to Mrs. Singleton, do not reach this level of hostility.

### III.

**\*\*4** Because we conclude that the conduct did not constitute sexual harassment, summary judgment was appropriate. It is unnecessary to reach the additional issues raised by the appellees, as those issues would arise only after a plaintiff has shown that the offensive behavior was sufficiently severe and pervasive to constitute sexual harassment. *See Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 182-83 (4th Cir.1998) (indicating that it is appropriate to grant summary judgment to employer without addressing affirmative defenses under *Faragher* if district court finds that the conduct was not severe and pervasive). Mrs. Singleton did not meet this threshold requirement.

*AFFIRMED*

C.A.4 (Va.),2004.
Singleton v. Department of Correctional Educ.
115 Fed.Appx. 119, 2004 WL 2603642 (C.A.4 (Va.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.