

Slip Copy
Slip Copy, 2008 WL 2307517 (D.S.C.)
(Cite as: 2008 WL 2307517 (D.S.C.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. South Carolina,
Columbia Division.
Earnestine G. TYLER, Plaintiff,
v.
RATNER COMPANIES, Defendant.
C/A No. 3:07-150-CMC-JRM.

June 2, 2008.

Earnestine G. **Tyler**, Columbia, SC, pro se.

C. Victor Pyle, III, James H. Fowles, III, Ogletree DeakinsNash Smoak and Stewart, Columbia, SC, for Defendant.

**OPINION and ORDER**

CAMERON McGOWAN CURRIE, District Judge.

Plaintiff Earnestine G. **Tyler** (" **Tyler**") filed this action *pro se* alleging that the **Ratner** Companies violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* by terminating her from employment on the basis of her age.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings and a Report and Recommendation ("Report"). On May 6, 2008, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted. The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if she failed to do so. Plaintiff has failed to file objections and the time for doing so has expired.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). in the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.,* 416 F.3d 310, 315 (4th Cir.2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

After reviewing the record of this matter, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court finds no clear error and agrees with the conclusions of the Magistrate Judge. Accordingly, the court adopts and incorporates the Report and Recommendation by reference in this Order. Defendant's motion for summary judgment is **granted.**

**IT IS SO ORDERED.**

*REPORT AND RECOMMENDATION*

JOSEPH R. McCROREY, United States Magistrate Judge.

Plaintiff, Earnestine G. **Tyler** (" **Tyler**") filed this action on January 17, 2007. She alleges a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[FN1] Defendant, the **Ratner** Companies (" **Ratner**"), filed a motion for summary judgment on November 19, 2007. Be-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 2307517 (D.S.C.)
(Cite as: 2008 WL 2307517 (D.S.C.))

Page 2

cause **Tyler** is proceeding *pro se,* she was advised on November 30, 2007, pursuant to *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir.1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of her complaint. **Tyler** filed a response on January 3, 2008,[FN2] and **Ratner** filed a reply on January 16, 2008.

> FN1. Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(e), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

> FN2. **Ratner** contends that this is not an appropriate response as it contains unsworn statements and it is unsupported by affidavit or other documents.

*SUMMARY JUDGMENT STANDARD*

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston,* 929 F.2d 1009, 1011 (4th Cir.1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1005 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact.*"*Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)."Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."*Id.* at 718-19 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.,* 977 F.2d 872, 874-75 (4th Cir.1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and *Doyle v. Sentry Inc.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (*see*Fed.R.Civ.P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Baber,* citing *Celotex Corp., supra.*Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.,* 12 F.3d 1310, 1316 (4th Cir.1993) and *DeLeon v. St. Joseph Hospital, Inc.,* 871 F.2d 1229, 1233 (4th Cir.1989), n. 7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Martin v. John W. Stone Oil Distrib., Inc.,* 819 F.2d 547 (5th Cir.1987) and *Evans v. Technologies Applications & Servs. Co.,* 80 F.3d 954 (4th Cir.1996).

*FACTS*

1. Creative Hairdressers, Inc., is a member of **Rat-**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ner Companies, L.C., and operates over 800 Hair Cuttery Salons and employs over 12,000 full-time and part-time employees. The Southeast Region of the company is comprised of eight Districts, each of which contains between six and thirteen salons. Hair Cuttery Salons provide haircuts, hair styling services, and retail hair care products to its clients. Teresa Chapman Decl., Paras. 1-3.

2. During the time period relevant to **Tyler's** allegations, she was employed at Hair Cuttery Salon # 2601 in Columbia, South Carolina, as a Stylist, District Employment Leader, and a keyholder. *See* Plaintiff's Dep. 60-64, 82-83; Teresa Chapman Decl., Para. 4; Mark Mostiller Decl., Para. 2

3. **Tyler** was forty years old at the time of her termination on February 24, 2006. Plaintiff's Dep. 7.

4. During the relevant time period, Mark Mostiller ("Mostiller") was the Salon Manager at Salon # 2601, Teresa Chapman ("Chapman") was the District Leader ("DL"), Traci Mott ("Mott") was the Regional Employment Leader ("REL"), and Yvonne Evans was the Associate Relations Representative. The Stylists report to their Salon Leader, who reports to a District Leader, who reports to a Regional Leader, who reports to the Corporate Office. Chapman Decl., Paras. 2 and 5.

5. **Tyler** went through training to be a District Employment Leader ("DEL") and was eventually hired by Mott to be a DEL. One of the DEL's jobs is to recruit stylists and managers. Plaintiff's Dep. 60, 62, 64.

6. Mostiller, at Chapman's direction, asked **Tyler** to be a keyholder. **Tyler** relieved Stylist Lakisha Ashford ("Ashford") of her duties as a keyholder. This may have led to subsequent problems between **Tyler** and Ashford. Plaintiff's Dep. 87-89; Mostiller Decl., Para. 2.

7. A keyholder is an associate who is entrusted with the responsibility of keeping the keys to the Salon. Mostiller Decl., Para. 2.

8. On Sunday, February 12, 2006, **Tyler** and Ashford got into a verbal disagreement at the Salon regarding the keyholder issue and the close-out of the Salon's cash register. Plaintiff's Dep. 89-91.

9. On Friday, February 17, 2006, **Tyler** and Ashford got into another verbal argument in the Salon. Mostiller was present. Plaintiff's Dep. 95-110; Mostiller Decl., Para. 3.

10. **Tyler** was upset with Ashford because the Salon was scheduled to close at 9:00 p.m. and Ashford began having her hair styled by another stylist at 8:45 p.m., which meant that **Tyler** would have to stay late ( **Tyler** estimated this would take 45 minutes to an hour) to lock up the Salon. Plaintiff's Dep. 95-96.

11. Mostiller instructed **Tyler** to take the Salon keys (which were usually left in the store at night) home with her so that she could leave and the other stylists could stay late (they could go out the back door which automatically locked). This would prevent the other stylists from having access to the keys or money at the Salon. Plaintiff's Dep. 100-101.

12. Mostiller instructed **Tyler** and Ashford to go to the back of the Salon so he could talk to them about their behavior towards each other. Plaintiff's Dep. 101, 123; Mostiller Decl., Para. 4; Chapman Decl., Para. 7.

13. Before Mostiller could begin talking, **Tyler** and Ashford began yelling at each other. Mostiller Decl., Para. 5.

14. **Tyler** states that Ashford used profanity towards her, calling **Tyler** a "bitch" and telling **Tyler** to get the "f* *k" out of the Salon. She also claims that while she and Mostiller were trying to do some work on the computer, Ashford told them "y'all are f-ing up." **Tyler** admits to being angry and raising her voice, but denies using profanity herself. Complaint at 2, Plaintiff's Dep.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

97, 102-106, 126.

15. Mostiller asked both Ashford and **Tyler** to be quiet, but neither complied and they kept arguing with each other. Mostiller Decl., Para. 5; Plaintiff's Dep. 106-107, 126, 148.[FN3]

> FN3. Mostiller states that both **Tyler** and Ashford continued yelling and using profane language. He claims that because of **Tyler's** aggressive posture, he feared that **Tyler** was going to start a physical fight with Ashford. Mostiller states he tried to get **Tyler** to leave the Salon and was only able to get her to leave by "putting [his] hand on her shoulder and guiding her out the door."Mostiller Decl., Para. 6.

16. Mostiller asked **Tyler** to go outside, but she did not do so and Mostiller pushed her out the back door. Plaintiff's Dep. 128.

17. **Tyler** returned to the Salon, Mostiller attempted to escort **Tyler** through the Salon and out the front door, and the argument between **Tyler** and Ashford continued. Mostiller Decl., Para. 8.

18. **Tyler** testified that she told Ashford that "somebody's going to take you out because of your mouth" or "somebody's going to be hurt now because of her attitude and her mouth."[FN4]She also told Ashford that "Mark [Mostiller] may be afraid of you, but I'm not," and the only reason she (**Tyler**) was leaving was because Mostiller asked her to leave. Plaintiff's Dep. 107, 128-129. [FN5]

> FN4. Mostiller claims that **Tyler** threatened Ashford by telling her that "one day someone is going to take you down," and "I'm going to get my cousin to take care of you."Mostiller Decl., Para. 9.

> FN5. In a statement faxed to Chapman after the incident, **Tyler** wrote:

> > Mark told me to leave and the last thing I said to [Ashford was] that somebody's gonna beat her down because of her attitude and her mouth and that the only reason that I was leaving [was] because [Mostiller] asked me to leave. [ ] I also said "now Mark might be afraid of you[,] but I'm not...."

> Plaintiff's Dep., Ex. 8.

19. **Tyler** contacted REL Mott several times after the incident, including the night of the incident and the next day. Plaintiff's Dep. 39, 110; Mott Decl., Paras. 2-3.

20. Mott states that **Tyler** told her there was an issue at her Salon the night before and **Tyler** was going to take some PTO hours because **Tyler** and Ashford "got into it" on Friday night. Mott Decl., Para. 3.

21. Mott states that she attempted to calm **Tyler** down and counsel her regarding the incident, but **Tyler** remained defiant, declaring that she was not going to let anyone disrespect her Salon Leader (Mostiller) like that; Ashford was stupid, ignorant and jealous of **Tyler**; **Tyler** was angry that Mostiller asked **Tyler** to leave the Salon instead of Ashford during their argument because **Tyler** was the keyholder; and if it had been her ( **Tyler's**) sister "she would have already gotten her ass beat."Additionally, Mott states that **Tyler** admitted that she should have just left the Salon and not gotten into an argument with Ashford, but Ashford had just made **Tyler** "so mad." Mott Decl., Paras. 4-11.

22. After the incident, Chapman spoke with **Tyler**, Ashford, and Mostiller regarding what had taken place. Chapman Decl., Para. 6; Mostiller Decl., Para. 10.

23. Chapman states that **Tyler** would not listen to her when she tried to discuss the situation, **Tyler** raised her voice a number of times during their

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

conversation, and **Tyler** did not accept responsibility for her actions. Chapman Decl., Para. 17.

24. Mott and **Tyler** went on a recruiting trip to Airport High School on February 22, 2006. Mott Decl., Para. 13.

25. After the presentation, Mott and **Tyler** had lunch. Mott states that **Tyler** remained angry and did not take accountability for her role in the situation. Mott Decl., Paras. 13-15.

26. Mott also told **Tyler** that she had spoken with Chapman, who informed Mott that **Tyler's** statement of events did not match the statements of others involved. On February 24, 2006, Mott called **Tyler** and told **Tyler** that she would be let go as a DEL for failing to live up to the requirements of the DEL position. Mott Decl., Para. 17.

27. **Ratner** has a Fair & Equal Treatment Policy which provides that "creating an environment that provides an uncomfortable atmosphere for clients or other Associates" is a Level 1 violation punishable by a verbal warning. "Refusing to obey a legitimate direct request of you Salon Leader" and "[u]sing profane or obscene language in front of clients or associates" are Level 2 violations punishable by a written warning.[FN6] "Engaging in fighting or other acts of violence on company business; or mistreatment or threats of any kind against clients, Leaders, or other Associates" is a Level 3 violation punishable by termination. Plaintiff's Dep., Ex. 2.

> FN6. It appears that using profane or obscene language can also be a Level 3 violation.

28. A Conference Report ("Report") was completed by Mostiller on February 23, 2006, and signed by **Tyler** (with a statement that she disagreed with the report) on February 24, 2006. The report provided that **Tyler** committed a Level 3 violation of engaging in fighting or other acts of violence-mistreatment or threats of any kind toward co-worker. Plaintiff's Dep., Ex. 7.

29. Chapman states that based on the information provided by Mostiller and Mott, she consulted with Yvonne Evans in Associate Relations and made the decision to terminate **Tyler** for a Level 3 violation of **Ratner's** Fair & Equal Treatment Policy, and to give a verbal and written warning to Ashford for Level 1 and Level 2 violations of the Fair & Equal Treatment Policy. Chapman Decl., Paras. 18-19.

30. Ashford was given verbal and written warnings for Level 1 and Level 2 violations of **Ratner's** Fair & Equal Treatment Policy. Mostiller signed the Report as Salon Leader, and Ashford also signed it, indicating her agreement with the Report. Chapman Decl., Para. 19; Mostiller Decl., Para. 11.

31. **Tyler** was terminated on February 24, 2006.

32. On June 9, 2006, **Tyler** filed a Charge of Discrimination ("Charge") with the South Carolina Human Affairs Commission and the United States Employment Opportunity Commission ("EEOC"), alleging discrimination based on her race, sex, and age. *See* Defendant's Motion for Summary Judgment at 2.

33. Plaintiff received a right to sue notice from the EEOC on October 20, 2006. *See* Plaintiff's Response to Court Ordered Special Interrogatories (Doc. 6).

*DISCUSSION*

It is difficult to discern **Tyler's** causes of action from her Complaint, but she appears to allege a claim for age discrimination. In her Complaint, **Tyler** alleges that she was terminated from **Ratner** and the "District [Manager] allowed a younger girl to continue to work after saying nasty words to me." Complaint at 3-4. As noted above, **Tyler** alleged in her Charge that she was discriminated against based on her race, sex, and age. At a hear-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ing before the undersigned on August 14, 2007, **Tyler** stated that her only claim was for age discrimination pursuant to the ADEA. She also confirmed this in her deposition. *See* Plaintiff's Dep. 81, 143. In its motion for summary judgment, **Ratner** argues that Plaintiff's claim for age discrimination is the only claim properly before the Court. **Tyler** has not disputed this assertion in her memorandum in opposition to summary judgment. **Ratner** contends that its motion for summary judgment should be granted because **Tyler** fails to establish a prima facie case of age discrimination; it has proffered legitimate, non-discriminatory reasons for **Tyler's** termination; and **Tyler** cannot show that these reasons were pretext for discrimination.[FN7]

> FN7. The parties participated in mediation on August 20, 2007, and agreed to settle the case. **Ratner** drafted a settlement agreement and release of claims memorializing the terms of the settlement reached at mediation, and forwarded it to **Tyler's** counsel (who was retained for purposes of mediation only). On October 17, 2007, **Tyler** filed a letter with the Court in which she stated that she was offered and accepted a settlement, but asks that the Court "allow me to go on with my case without having to sign the settlement agreement and release of claims." Doc. 35. **Ratner** did not file a motion to enforce the settlement, and thereafter filed its motion for summary judgment. With her letter, **Tyler** also included an incident report she filed with the Richland County (South Carolina) Sheriff's Department on October 17, 2007, alleging that Mostiller assaulted her on February 17, 2006 (approximately 20 months before she filed the incident report).

**Tyler** appears to allege that she was terminated based on her age in violation of the ADEA. Under the alternative burden-shifting method of proof of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),[FN8] a plaintiff may establish a prima facie case of age discrimination under the ADEA by proving that: (1) he was a member of the protected class (at least forty years old); (2) he was performing his job to the legitimate expectations of his employer; (3) he suffered a materially adverse employment action; and (4) the materially adverse employment action occurred under circumstances that raise a reasonable inference of unlawful discrimination (e.g., that he was replaced by someone of comparable qualifications under forty years of age or significantly younger). *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). If plaintiff establishes a prima facie case of employment discrimination, then defendant has the burden of articulating a legitimate, non-discriminatory reason for failing to promote him. *O'Connor,* 84 F.3d at 719. If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

> FN8. **Tyler** has not alleged that she has any direct evidence of discrimination.

A. *Prima Facie Case*

**Ratner** contends that **Tyler** cannot establish a prima facie case of age discrimination because: (1) she has not shown that she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action and (2) she has not shown that the adverse employment action occurred under circumstances that raise a reasonable inference of unlawful age discrimination. For purposes of summary judgment, **Ratner** concedes that **Tyler** was a member of a protected group (over the age of forty) and she was terminated.

**Ratner** contends that **Tyler** was not meeting its legitimate expectations because she threatened a coworker, failed to acknowledge her misbehavior,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

failed to show remorse or take responsibility for her actions, and continued to express anger towards her co-workers and superiors. *See* Chapman Decl., Paras. 14-18; Mostiller Decl., Para. 10; Mott Decl., Paras. 4-11 and 14-17. The company contends that **Tyler** fails to show that her termination occurred under circumstances that raise a reasonable inference of unlawful age discrimination because she has not shown that Ashford was similarly situated to her and has not shown that a younger employee replaced her.

**Tyler** does not directly address **Ratner's** contentions, but argues that she did not use profanity or threaten Ashford. Although **Tyler** disputes Mostiller's statement that **Tyler** told Ashford that **Tyler** was going to get her cousin to take Ashford out, **Tyler** testified she told Ashford that Ashford was going to be hurt or that Ashford was going to be taken out because of Ashford's mouth. Plaintiff's Dep. 107, 128-129. **Tyler** has not addressed **Ratner's** other contentions as to the reasons the company believed she was not meeting its legitimate expectations. It is the employer's perception of job performance, and not the employee's perception that is controlling. *See Dejarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir.1998); *Smith v. Flax*, 618 F.2d 1062 (4th Cir.1980); *Shore v. A.W. Hargrove Ins. Agency, Inc.*, 873 F.Supp. 992, 998 (E.D.Va.1995); *Simmons v. Marsh*, 690 F.Supp. 1489, 1493 (E.D.Va.1988), *aff'd*, 852 F.2d 566 (4th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988).

**Tyler** appears to argue that she has met the fourth prong of her prima facie case because Ashford, who was a younger employee, used profanity, but was not terminated. In its motion for summary judgment, **Ratner** argues that Ashford was not similarly situated to **Tyler** because: (1) Ashford did not threaten anyone, but **Tyler** threatened Ashford; (2) Ashford was not a DEL or a keyholder, but **Tyler** held these positions of responsibility; and (3) Ashford acknowledged that her behavior was improper, but **Tyler** refused to accept responsibility for her actions or admit any fault. **Tyler** has not shown that she and Ashford were similarly situated. In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. *See Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir.1992); *see also Lanear v. Safeway Grocery*, 843 F.2d 298 (8th Cir.1988) (plaintiff must prove that he and the non-protected employee were similarly situated in all respects and the other employee's acts were of comparable seriousness to his own); *see also Heyward v. Monroe*, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec.7, 1998) (unpublished) (employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."(citations omitted)), *cert. denied*, 527 U.S. 1036, 119 S.Ct. 2395, 144 L.Ed.2d 795 (1999); *Smith v. Stratus Computer, Inc.*, 40 F.3d 11 (1st Cir.1994) (in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct) (citation omitted), *cert. denied*, 514 U.S. 1108, 115 S.Ct. 1958, 131 L.Ed.2d 850 (1995); *see also Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir.2000) (finding that probationary and non-probationary employees are not similarly situated), *cert. denied*, 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001). **Tyler** fails to show that she is similarly situated to Ashford. Although Ashford engaged in misconduct, there is no evidence that she threatened a co-worker. Further, Ashford was not a DEL or keyholder.

B. *Legitimate, Non-Discriminatory Reason*

Even if **Tyler** could establish a prima facie case, **Ratner** has articulated a legitimate, non-discriminatory reason for **Tyler's** termination, that **Tyler** threatened another employee which was a direct violation of **Ratner's** Fair and Equal Treatment Policy. Chapman states she made the decision

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

to terminate Tyler based on reports from Mostiller and Mott that Tyler made a threat of physical violence against Ashford, factors relating to Tyler's position as an employee with the heightened responsibilities of being a DEL and a keyholder, and Tyler's refusal to accept responsibility for her actions or admit any fault. Chapman Decl., Paras. 10-11, 14-18. Ratner contends that Chapman's decisions are in accord with the Fair & Equal Treatment Policy, which provides that termination is the proper remedy for the offense Tyler committed (threatening a co-worker) and a written and verbal warning was the appropriate remedy for the offenses Ashford committed (disobeying a Salon Leader's order and creating an uncomfortable atmosphere for clients or other Associates). Chapman Decl., Paras. 18-19; Plaintiff's Dep., Ex. 2.

Ratner contends that Tyler has offered no evidence of its articulated reasons for her termination being pretext for age discrimination. Tyler testified that no one told her she was discharged because of her age, she was not aware of any documents that supported her belief that she was terminated because of her age, and she had no evidence that Ratner would have made a different decision if she had been under forty years of age at the time of her termination.[FN9] *See* Plaintiff's Dep. 134-136. Chapman, Mott, and Mostiller all state that they did not know Plaintiff's age at the time of her termination and she did not mention anything to them about her age or that she felt she was being terminated or discriminated against because of her age. Chapman Decl., Para. 20; Mott Decl., Para. 18; Mostiller Decl., Para. 12.

> FN9. In her opposition memorandum, Tyler makes several allegations concerning Mostiller pushing her. These allegations, however, do not show any evidence of age discrimination. Tyler also questions why she was allowed to go on a recruiting trip after she allegedly broke company rules. There is no indication, however, that Chapman had finished her investigation of the alleged incidents at the time of the recruiting trip, Tyler returned to the Salon during that time, or that this concerns age discrimination.

Tyler claims that she had seen older stylists in the Salon "be disrespected by the same person ... Lakisha Ashford." She has, however, presented no evidence that Ashford was the person who made the decision to terminate Tyler or that any older employee was subjected to an adverse employment action because of or by Ashford.

In her opposition memorandum, Tyler appears to argue that the reasons given are pretextual because she did not use profanity or threaten Ashford. As noted above, Tyler wrote a statement shortly after the incident in which she stated she told Ashford that "somebody's gonna beat her down because of her attitude and her mouth." Plaintiff's Dep., Ex. 8. To the extent Tyler claims that Ratner should not have considered this a threatening comment or is questioning the merits of Ratner's decision, she fails to show that the articulated reason for her termination was false or was not the real reason for the action. *See, e.g., Hawkins v. PepsiCo, Inc.*, 203 F.3d 274 (4th Cir.2000); *Kun v. Berkeley County Gov't*, 214 F.Supp.2d 559, 566 (D.S.C.2001), *aff'd*, 32 Fed. Appx. 689, 2002 WL 570670 (4th Cir. Apr.17, 2002). Federal Courts "do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir.2005), citing *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir.1998); *see also Rowe v. Marley Co.*, 233 F.3d 825, 831 (4th Cir.2000) ("The decision to discharge [plaintiff] and retain [other employees] is the kind of business decision that we are reluctant to second-guess."); *see also Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1186 (5th Cir.1997) (holding that "[t]he pretext question is not a question whether [the plaintiff] 'considered himself' late, but whether [the employer] considered [the plaintiff] late when he decide to charge [the plaintiff] with

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Slip Copy
Slip Copy, 2008 WL 2307517 (D.S.C.)
**(Cite as: 2008 WL 2307517 (D.S.C.))**

annual leave for his tardiness").

Even if **Tyler** did not use profanity or threaten Ashford, she fails to show pretext as she fails to show that the Chapman did not have a reasonable belief that this conduct occurred. *See Holland v. Washington Home, Inc.,* 487 F.3d 208 (4th Cir.2007), *cert. denied,* --- U.S. ----, 128 S.Ct. 955, 169 L.Ed.2d 734 (2008) (in assessing pretext, a court's focus is on the perception of the decisionmaker, that is, whether the employer believed its stated reason was credible); *see also Jones v. Giant Foods, Inc.,* 2000 WL 1835393 (D.Md. Nov.27, 2000) (unpublished) (Jones argued that Giant's proffered reason for firing her, that she had stolen two cans of soup, was pretextual because she did not, in fact, steal the soup. "What matters in the Title VII analysis, however, is not whether Jones stole two cans of soup, but whether Giant in good faith believed she did."). Here, **Tyler** has come forward with no evidence to show that Chapman did not believe, at the time the decision to terminate **Tyler** was made, that **Tyler** used profanity and made threats.

*CONCLUSION*

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 37) be granted.

D.S.C.,2008.
Tyler v. Ratner Companies
Slip Copy, 2008 WL 2307517 (D.S.C.)

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.